**TWC CABLE PARTNERS, Plaintiff,**

v.

**CABLEWORKS, INC., et al., Defendants.**

**Civil Action No. 95–2640(SMO).**

United States District Court,
D. New Jersey.

June 6, 1997.

Daniel J. Lefkowitz, P.C., Jericho, NY, Walter F. Timpone, McElroy, Deutsch & Mulvaney, Morristown, NJ, for Plaintiff.

Robert J. Longhi, Longhi & McCann, P.C., New Brunswick, NJ, for Defendants, James Hamada and Irving Yellen.

Andrew Christopher, North Brunswick, NJ, pro se.

## ORDER

ORLOFSKY, District Judge.

This matter having come before the Court on the motion of Defendant, Andrew Christopher, to dismiss Plaintiff's second amended complaint pursuant to Fed.R.Civ.P. 12(b)(6), Daniel J. Lefkowitz, Esq., and Walter F. Timpone, Esq., of McElroy, Deutsch & Mulvaney, appearing on behalf of the Plaintiff, and Defendant, Andrew Christopher, appearing *pro se;* and,

The Court having considered the parties' submissions filed in support of, and in opposition to the motion;

For the reasons set forth in this Court's Opinion filed with this Order;

IT IS HEREBY ORDERED on this 6th day of June, 1997, that the motion of Andrew Christopher to dismiss Plaintiffs' second amended complaint pursuant to Fed.R.Civ.P. 12(b)(6), shall be considered by the Court as a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), and is hereby granted in part and denied in part; and,

IT IS HEREBY FURTHER ORDERED that Defendant's motion for judgment on the pleadings is granted with respect to Plaintiff's claims against him under 47 U.S.C. § 605, and denied in all other respects.

### OPINION

Defendant, Andrew Christopher, has moved to dismiss Plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6). Defendant's *pro se* motion requires this Court to address an issue about which two Courts of Appeals have disagreed[1] and which has yet to be addressed by the Third Circuit. Specifically, did Congress, by enacting section 633 of the Federal Communications Act, 47 U.S.C. § 553, intend that section to be the sole statutory remedy for interference with the transmission of signals over a cable system; or rather, did Congress intend that section 705 of the Federal Communications Act, as amended by the Cable Communications Policy Act of 1984, 47 U.S.C. § 605, also govern such interference over a cable network.

For the reasons set forth below, I conclude that 47 U.S.C. § 553 is the sole statutory remedy for interference with the transmission of signals over a cable system, and that by enacting this provision, Congress intended that 47 U.S.C. § 605 would no longer regulate the unauthorized decryption of transmissions over a cable system. Accordingly, this Court will treat the Defendant's motion to dismiss as a motion for judgment on the pleadings and grant it in part, and deny it in part.[2]

### I. Facts and Procedural Background

Plaintiff, TWC Cable Partners d/b/a Staten Island Cable ("SIC"), offers cable television services to subscribers who request and pay for them. (Second Amended Complaint ¶ 9). SIC's programming is offered to its subscribers in various packages of programming services—basic, standard, or standard plus. Subscribers may also elect to purchase certain premium programming services for an additional monthly charge per service. (Second Amended Complaint ¶ 10). Each subscriber to SIC's services is entitled to receive only that level of programming services which he or she selects and purchases. (Second Amended Complaint ¶ 11).

The signals for all of SIC's cable television services are transmitted from SIC reception facilities to subscribers' homes through a network of cable wiring and equipment. (Second Amended Complaint ¶ 13). In order for a subscriber to receive these transmitted cable television signals on his or her television set, SIC provides each subscriber with a device known as a "converter" which converts the multiple signals transmitted simultaneously over the network of cable wiring into different channels which can be viewed on a subscriber's television set. (Second Amended Complaint ¶ 13).

To prevent subscribers from receiving programming services for which they have not paid, SIC encodes or scrambles the signals for specific programming services. Subscribers purchasing scrambled programming services are provided with a device known as a descrambler or decoder, which is incorporat-

---

1. *Compare United States v. Norris,* 88 F.3d 462 (7th Cir.1996), *with International Cablevision, Inc. v. Sykes,* 75 F.3d 123 (2d Cir.1996).

2. A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) must be filed before a defendant files a responsive pleading. *Turbe v. Government of Virgin Islands,* 938 F.2d 427, 428 (3d Cir.1991). In contrast, a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) may be filed after the pleadings are closed. *Id.* at 428. Because Defendant, Christopher, has already filed an answer to Plaintiff's second amended complaint, his motion will be considered under Rule 12(c). However, this conclusion is merely one of procedure because the Third Circuit has held that a dismissal under Rule 12(c) employs the same standard as a Rule 12(b)(6) motion to dismiss. *See id.* at 428. *See also S.C. Holdings, Inc. v. A.A.A. Realty Co.,* 935 F.Supp. 1354, 1358 n. 2 (D.N.J.1996).

ed into the subscriber's converter. (Second Amended Complaint ¶ 14). The descrambler decodes the scrambled service so that the programming selected and purchased can be viewed clearly on a subscriber's television set. Programming services not purchased will continue to be scrambled and therefore will be unviewable on the subscriber's television set. (Second Amended Complaint ¶ 14).

SIC alleges that the Defendants have engaged in an ongoing scheme to sell and/or illegally modify cable television decoders for profit. SIC contends that the Defendants have sold the illegal equipment with the specific intent that the devices be used to decode scrambled programming transmitted through the network of cable wiring from SIC's reception facilities to subscribers homes, thus allowing dishonest customers of Defendants to receive SIC's scrambled programming services without payment. Defendants' "pirate" decoders cannot readily be detected by SIC once connected. (Second Amended Complaint ¶ 23).

On June 12, 1995, SIC filed its initial complaint against Defendants, Cableworks, Inc., James Hamada and Irving Yellen, for violations of the Federal Communications Act, as amended by the Cable Communications Policy Act of 1984, and conversion. SIC filed an amended complaint on December 7, 1995, correcting the spelling of one defendant's name. On April 30, 1997, SIC filed a second amended complaint, adding Andrew Christopher ("Christopher") as an additional defendant. Defendant, Christopher, has now moved to dismiss SIC's claims against him contained in the second amended complaint.

## II. Standard for Dismissal Pursuant to Rule 12(b)(6)

When considering a defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), the Court must accept all well pleaded allegations in the complaint as true and view them in a light most favorable to the plaintiff. *Schrob v. Catterson,* 948 F.2d 1402 (3d Cir.1991). A motion to dismiss pursuant to Rule 12(b)(6) requires that the court consider all factual allegations in the complaint, as well as all reasonable inferences to be drawn from the facts alleged, in the light most favorable to the plaintiff. *Gomez v. Toledo,* 446 U.S. 635, 636, 100 S.Ct. 1920, 1921–22, 64 L.Ed.2d 572 (1980); *Piecknick v. Pennsylvania,* 36 F.3d 1250, 1255 (3d Cir.1994). Likewise, all pleadings must be liberally construed so "as to do substantial justice." Fed.R.Civ.P. 8(f).

Nevertheless, legal conclusions made in the guise of factual allegations will not be given the presumption of truthfulness and will not preclude the dismissal of a complaint. *See Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 2944–45, 92 L.Ed.2d 209 (1986). When it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations of the complaint, a dismissal pursuant to Rule 12(b)(6) is proper. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

## III. Discussion

### A. *Plaintiff's Claims for Violations of the § 605 and § 553 of Title 47*

Plaintiff alleges in its second amended complaint that the actions of Defendant, Andrew Christopher, violated sections 705 and 633 of the Federal Communications Act, as amended by the Cable Communications Policy Act of 1984. *See* 47 U.S.C. §§ 605, 553. In his motion to dismiss, Christopher contends that, because the decoding devices which Plaintiff alleges the Defendants sold cannot directly intercept over-the-air satellite transmissions, but can only interfere with the distribution of those transmissions over a cable system, his actions are not subject to regulation under § 605(a) [3] or 605(e)(4) of

---

**3.** Section 605(a) of Title 47 provides in relevant part that:

    (a) Practices prohibited

    Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its

Title 47.[4]

While Plaintiff concedes in its brief in opposition to the motion to dismiss that "the devices sold by the defendants ... cannot directly intercept over-the-air satellite transmissions," (Plaintiff's brief at 4), the Plaintiff continues to argue that § 605 applies to the interference with the distribution of signals over the cable system.

While the Third Circuit has not ruled on the applicability of § 605 to the unauthorized decryption of cable programming, the two Circuits which have addressed the issue have reached different conclusions as to whether § 605 regulates interference with the transmission of signals over the cable system. *Compare United States v. Norris,* 88 F.3d 462 (7th Cir.1996) (finding that § 605 does not apply to programming transmitted over cable network), *with International Cablevision, Inc. v. Sykes,* 75 F.3d 123 (2d Cir.1996) (concluding that § 605 applies to programming transmitted over cable network).

In *Norris,* the Seventh Circuit concluded that the unlawful interception of cable television programming transmitted over a *cable network* is not regulated by § 605, but instead, covered by § 553 of Title 47. In so holding, the court noted that in 1984, as part of an amendment to the Federal Communications Act, 47 U.S.C. §§ 151, *et seq.,* Congress enacted § 553 of Title 47, entitled, "Unauthorized reception of cable service," as part of the Cable Communications Policy Act of 1984, which provides in relevant part that:

(1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

(2) For the purpose of this section, the term "assist in intercepting or receiving" shall include the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1).

47 U.S.C. § 553(a).

By its plain language, it is clear that this section was specifically designed to regulate the theft of cable service. Indeed, its legislative history reinforces this conclusion by providing that § 553(a) is "primarily aimed at preventing the manufacture and distribution of so-called 'black boxes' and other unauthorized converters which permit reception of

destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit

or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

4.  47 U.S.C. § 605(e)(4) provides that:

Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation.

cable service without paying for the service." H.R.Rep. No. 98–934, at 84, *reprinted in* 1984 U.S.C.C.A.N. 4655, 4721. *See General Instrument Corporation of Delaware v. Nu– Tek Electronics & Manufacturing, Inc.,* No. 93–3854, 1996 WL 402511, *2 (E.D. Pa. April 12, 1996).

The *Norris* court then endeavored to determine whether, by enacting § 553 in 1984, Congress intended that this section be the sole provision addressing the interception of cable television programming transmitted over a cable network, or whether it intended such behavior to be regulated by § 605, as well. The court noted that the respective coverage of § 605 and § 553 concerning the unlawful interception of cable television programming was specifically addressed in the Report of the Energy and Commerce Committee ("House Report") accompanying the Cable Communications Policy Act as follows:

> Nothing in [sec. 553] is intended to affect the applicability of existing section 605 to theft of cable service, or any other remedies available under existing law for theft of service....
>
> The Committee intends the phrase "service offered over a cable system" to limit the applicability of [sec. 553] to theft of a service from the point at which it is actually being delivered over the cable system. Thus, situations arising with respect to the reception of services which are transmitted over-the-air (or through another technology), but which are also distributed over a cable system, continue to be subject to resolution under section 605 to the extent reception or interception occurs prior to or not in connection with, distribution of the service over the cable system....
>
> Hence [sec. 553(a)(2) ] is primarily aimed at preventing the manufacture and distribution of so-called "black boxes" and other unauthorized converters which permit reception of cable service without paying for the service.

*Id.* at 466 (quoting H.R.Rep. No. 934, at 83–84, *reprinted in* 1984 U.S.C.C.A.N. at 4720–21).

The court found that, notwithstanding § 605's application to transmissions over a cable network prior to 1984, the House Re-

port provides "a clear indication of Congress's intent that where cable programming is broadcast through the air and then retransmitted by a local cable company over a cable network, § 605 should govern the interception of the satellite or radio transmission *through the air,* while § 553(a) should govern the interception of the retransmission *over a cable network,* specifically the manufacture and distribution of decoder boxes." *Id.* at 466 (emphasis supplied).

The Second Circuit, however, in *International Cablevision, Inc. v. Sykes,* 75 F.3d 123 (2d Cir.1996), in interpreting the same legislative history, concluded that *both* § 605 and § 553 govern the interception of cable television programming transmitted over a cable network. The court emphasized that the legislative history of § 553 provides that, "[n]othing in this section is intended to affect the applicability of existing section 605 to theft of cable service." *Id.* at 132. In so holding, the court recognized that "[a]lthough the issue is not entirely free from doubt, the more likely reading of this legislative history is that in view of the uniform prior judicial interpretation of § 605 as applicable to the theft of cable service, the first emphasized passage in the above quotation was intended to make clear that § 605 would continue to be so applicable ... [a]lthough the second emphasized passage [of the legislative history] might be read to undercut this interpretation of the first passage." *Id.*

In *Norris,* however, the Seventh Circuit criticized the Second Circuit's decision in *Sykes* by noting that "[t]he fatal difficulty with the Second Circuit's analysis ... is that it plucks one sentence of § 553(a)'s legislative history out of context and assigns that sentence a meaning completely at odds with the context." The *Norris* court concluded that the portion of the House Report which provides that "situations arising with respect to the reception of services which are transmitted over-the-air (or through another technology), but which are also distributed over a cable system, continue to be subject to resolution under section 605 *to the extent reception or interception occurs prior to or not in connection with, distribution of the services over the cable system,*" H.R.Rep. No. 934, at

83–84, *reprinted in* 1984 U.S.C.C.A.N. at 4720–21 (emphasis supplied), "cannot be reconciled with the conclusion that § 605 applies to the unlawful interception of cable television programming transmitted over a cable network." *Norris,* 88 F.3d at 469. In other words, the *Norris* Court found that the phrase "to the extent" in the House Report clearly indicated an intent by Congress to limit the application of § 605.

Plaintiff's criticisms of *Norris* are unpersuasive. First, I find the *Norris* court's conclusion that, once Congress enacted § 553 in 1984, § 605 no longer governed the unlawful interception of cable television programming transmitted over a cable network to be in accordance with the canon of statutory construction that Congress is presumed not to enact superfluous or redundant legislation. *See Norris,* 88 F.3d at 467. In addition, although Plaintiff points to the *Norris* court's failure to reconcile cases decided prior to the enactment of § 553 in 1984, I find such cases to be irrelevant to this Court's determination in the present case in light of the *Norris* court's conclusion that § 605 was not divested of its power to regulate transmissions over a cable network until 1984, precisely when § 553 was enacted. Further, I concur with the *Norris* court's interpretation of the statutory language, as well as all the relevant legislative history, rather than selected portions, in determining that § 605 does not govern the unauthorized interception of transmissions over a cable network.

In further criticism of *Norris,* Plaintiff cites comments made by Senator Packwood, then-Chairman of Senate Committee on Commerce, who observed that Congress, by amending § 605 in 1984, intended "that all acts which presently constitute a violation of present section 605 shall continue to be unlawful under that section as amended." *See* 130 Cong. Rec. S. 14286 (1984), *reprinted in* 1984 U.S.C.C.A.N. at 4746. In addition to enacting § 553, Congress, as part of the Cable Communications Policy Act of 1984, also amended the prior § 605. The amendment to § 605 essentially provided for liability for those who assist in violating the prior § 605 and for heightened penalties. Thus, while Senator Packwood may have been correct in

his observation that nothing in the amendments to § 605, *per se,* limits the applicability of that section to the unauthorized interception of transmissions over a cable network, I find that those amendments, when viewed *in conjunction with* Congress's simultaneous enactment of § 553, along with the unequivocal manifestation of Congressional intent regarding the interplay of § 605 and § 553 contained in the House Report, lead to the more reasonable conclusion that § 605 was divested of its power to regulate transmissions over a cable network upon the enactment of § 553 in 1984.

■ Accordingly, I join the Seventh Circuit, as well as several district courts in the Third Circuit and elsewhere, in concluding that § 605 governs only the interception of satellite or radio transmission through the air and does not regulate the unlawful interception of communications which are sent over a cable network. *See Norris,* 88 F.3d at 469; *Comcast Cablevision of Philadelphia, L.P. v. Roselli,* No. 96–2938, 1997 WL 36957 (E.D.Pa. Jan. 30, 1997) ("the court finds more persuasive the reasoning in Norris"); *That's Entertainment, Inc. v. Anciano's Inc.,* No. 94–7199, 1996 WL 514989 (N.D.Ill. Sept. 6, 1996); *General Instrument Corporation of Delaware v. Nu–Tek Electronics & Manufacturing, Inc.,* No. 93–3854, 1996 WL 402511 (E.D. Pa. April 12, 1996) ("I thus respectfully disagree with [the Sykes court's] opinion"); *Columbia Cable TV Company, Inc. v. McCary,* 954 F.Supp. 124 (D.S.C.1996) ("[f]or the reasons stated in *United States v. Norris* … this court finds that 42 U.S.C. § 605 is not applicable to this action"); *Joe Hand Promotions, Inc. v. Rennard Street Enterprises,* 954 F.Supp. 1046 (E.D.Pa.1997); *TCI Cablevision of New England v. Pier House Inn, Inc.,* 930 F.Supp. 727 (D.R.I.1996) ("[t]his court finds the Seventh Circuit's holding both legally sound and logically compelling"); *Comcast Cablevision of Philadelphia, L.P. v. Olsen,* No. 94–1215, 1995 WL 498717 (E.D.Pa. Aug. 22, 1995). *But see Joe Hand Promotions v. Burg's Lounge,* 955 F.Supp. 42 (E.D.Pa.1997) (adhering to the Second Circuit's analysis); *TKR Cable Co. v. Cable City Corp.,* No. 96–2877, 1996 WL 465508 (D.N.J. July 29, 1996) (following *Sykes* without citation to *Norris* ).

Since SIC concedes that "the devices sold by the defendants ... cannot directly intercept over-the-air satellite transmissions," and can only interfere with the retransmission of satellite transmissions over a cable network, (Plaintiff's Brief at 4), SIC's claims under § 605 must be dismissed for failure to state a claim upon which relief can be granted.

Defendant, Christopher, next contends that Plaintiff's claims under § 553 must be dismissed because "Plaintiff states that these converters have the ability to *receive* unauthorized cable signals ... A converter[']s sole function is to *interpret* signal that is sent to it and relay it to the television receiver." (Defendant's Motion to Dismiss, ¶ 3) (emphasis supplied).

Section 553(a)(1) provides in relevant part, that, "no person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).

■ In its second amended complaint, SIC alleges as follows:

● The defendants modify and/or sell "pirate decoders" to end users and/or sub-distributors for use on the specific cable television system that services the end-users' viewing locations. (Second Amended Complaint ¶ 1).

● It is possible for a dishonest individual to install an unauthorized or "pirate" descrambler/converter unit (one illegally programmed to descramble all programming services) onto the plaintiff's cable television system or otherwise tamper with plaintiff's equipment in order to receive all of SIC's scrambled programming without authorization and without making payment therefore. (Second Amended Complaint ¶ 17).

● The pirate decoders sold by the defendants cannot be readily detected by SIC once connected to its cable system. (Second Amended Complaint ¶ 23).

Whether the decoder's function is called "receiving," "interpreting," or "descrambling," is a distinction without a difference, as the Federal Rules provide that pleadings must be liberally construed so "as to do substantial justice." Fed.R.Civ.P. 8(f). Upon reviewing SIC's allegations, it is clear that SIC has sufficiently alleged a violation of § 553 in this case. Accordingly, Defendant, Christopher's, motion to dismiss SIC's claims under § 553 will be denied.

B. *Defendant's Other Grounds for Dismissal*

Defendant, Christopher, also moves to dismiss SIC's complaint on the basis that "Plaintiff offers no evidence that we sold any of these converters on Staten Island, let alone the fact that we sold them with inten[t] to defraud the plaintiff or anyone else." (Defendant's Motion to Dismiss, ¶ 4).

■ Defendant obviously misconstrues the nature of a motion to dismiss pursuant to Rule 12(b)(6). Such a motion may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, the Court nonetheless concludes that the plaintiff is not entitled to relief. *Gomez v. Toledo*, 446 U.S. 635, 636, 100 S.Ct. 1920, 1921–22, 64 L.Ed.2d 572 (1980); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255 (3d Cir. 1994). Whether SIC has presented, or even can present any evidence to support its claims is irrelevant at this juncture.

Lastly, Defendant, Christopher, contends that Plaintiff's second amended complaint should be dismissed because he was not served with the complaint within the requisite time limit, pursuant to Fed.R.Civ.P. 4(m).[5] By its terms, Rule 4(m) allows a court either to dismiss an action, or to provide a

---

5. Rule 4(m) provides in relevant part, that:
   If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.
   Fed.R.Civ.P. 4(m).

time limit for service, only if the plaintiff fails to effect service within 120 days of filing the complaint.

SIC did not name Andrew Christopher as a defendant in this action until SIC was granted leave to file a second amended complaint on April 23, 1997. SIC's second amended complaint was filed on April 30, 1997. Thus, it is clear that 120 days have not passed since SIC filed its second amended complaint, the first complaint which named Christopher as a defendant. Moreover, the record reflects that on May 16, 1997, SIC served the second amended complaint on Defendant, Christopher, by sending a Summons and a copy of the second amended complaint to Christopher. Accordingly, Defendant's motion to dismiss pursuant to Fed.R.Civ.P. 4(m), must fail.

For the above reasons, Defendant's motion for judgment on the pleadings will be granted in part, and denied in part. This Court will enter an appropriate order.