**JOE HAND PROMOTIONS, INC.**

v.

**RENNARD STREET ENTERPRISES, INC., et al.**

Civil Action No. 96–3593.

United States District Court, E.D. Pennsylvania.

Aug. 20, 1997.

Alan Gelb, Cherry Hill, NJ, for Joe Hands Promotions.

Robert C. Keller, Robert C. Keller and Associates, Upper Darby, PA, for Galway's Pub., Ltd., David Galway, Wilhelmina Galway, Ralph Ziegler, Ralph Ziegler.

Peter A. Lennon, Broomall, PA, for Lennon's Bar, Inc., James Lennon, Gloria C. Lennon.

### MEMORANDUM AND ORDER

HUTTON, District Judge.

Presently before this Court is the Motion of Defendants Lennon's Bar, Inc., James Lennon, and Gloria C. Lennon to Dismiss the Plaintiff's Amended Complaint for Failure to State a Claim Upon Which Relief May be Granted and Lack of Jurisdiction (Docket No. 28), and the plaintiff's response thereto.

## I. BACKGROUND

On June 17, 1995, Home Box Office ("HBO") broadcast nationwide from Las Vegas, Nevada, via coaxial cable and satellite, a championship prizefight boxing match between Riddick Bowe and Jorge Luis Gonzalez. The plaintiff, Joe Hand Promotions, Inc., was granted the right to distribute the heavyweight boxing match along with the other matches on the card, and entered into agreements with various entities in Pennsylvania to publicly exhibit the boxing matches to their patrons.

The plaintiff claims that on June 17, 1995, several defendant businesses and their owners[1] exhibited the boxing matches at the time of their transmission even though they had not paid the required subscription fee. Therefore, on May 9, 1996, the plaintiff filed suit against these defendants in this Court, alleging that the defendants violated 47 U.S.C. § 605 by exhibiting the boxing matches without authorization. In addition, the plaintiff alleged claims of conversion and interference with prospective economic advantage. This Court, however, dismissed the plaintiff's complaint, and afforded the plaintiff the opportunity to amend the complaint to state a claim upon which relief could be granted. *Joe Hand Promotions, Inc. v. Rennard Street Enter., Inc.*, 954 F.Supp. 1046, 1055–1056 (E.D.Pa.1997) (Hutton, J.).

On February 7, 1997, the plaintiff amended its complaint and again alleged that the defendants violated 47 U.S.C. § 605. The plaintiff also alleged claims of conversion and interference with prospective advantage. On February 24, 1997, three of the defendants, Lennon's Bar, Inc., James Lennon, and Gloria Lennon (collectively "the defendants"), responded by filing the instant motion to dismiss.

---

1. The defendants in the instant suit are Rennard Street Enterprises, Inc., Thomas I. Broccardi, Galway's Pub, Ltd., David Galway, Wilhelmina Galway, Lennon's Bar, Inc., James Lennon, Gloria C. Lennon, 2603 Tren, Inc., John W. Fitton, Jr., and Diane Murtaugh.

2. Rule 12(b)(6) provides that:

## II. DISCUSSION

### A. Standard for Dismissal under Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief ..." Fed.R.Civ.P. 8(a)(2). Accordingly, the plaintiff does not have to "set out *in detail* the facts upon which he bases his claim." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) (emphasis added). In other words, the plaintiff need only "give the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (emphasis added).

When considering a motion to dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6),[2] this Court must "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them. Dismissal under Rule 12(b)(6) ... is limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved." *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir. 1990) (citing *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988)); *see H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989). The court will only dismiss the complaint if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *H.J. Inc.,* 492 U.S. at 249–50, 109 S.Ct. at 2906 (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

### B. Analysis of Plaintiff's Claims

In their motion, the defendants argue that the plaintiff's complaint must be dismissed because it fails to allege facts sufficient to

Every defense, in law or fact, to a claim for relief in any pleading shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted.... Fed.R.Civ.P. 12(b)(6).

plead a cause of action pursuant to 47 U.S.C. § 605. Additionally, they assert that the plaintiff lacks standing to bring the instant suit under 47 U.S.C. § 605. They also urge the Court to dismiss the state law allegations because there is no reasonable basis for it to exercise supplemental jurisdiction.

### 1. *Federal Claim: 47 U.S.C. § 605*
#### a. *Sufficiency of Pleadings*

In its January 29, 1997 opinion, this Court clarified the distinctions between a "radio communication" and "wire communication" for purposes of 47 U.S.C. §§ 553 and 605. *Joe Hand Promotions,* 954 F.Supp. at 1050–1054. Adopting the reasoning set forth by the United States Court of Appeals for the Seventh Circuit in *United States v. Norris,* 88 F.3d 462, 465 (7th Cir.1996), this Court held that:

> because a television signal transmitted through the air is a "radio communication," any person may be held liable under 47 U.S.C. § 605 for the unauthorized reception and publication of cable programming transmitted through the air. On the other hand, because a television signal transmitted over coaxial cable is a "wire communication,", only legitimate communication personnel may be held liable for publishing a cable broadcast while it is actually being transmitted over a system of coaxial cables under 47 U.S.C. § 605. All other persons who publish a cable broadcast while it is actually being transmitted over a system of coaxial cables, however, may only be held liable under 47 U.S.C. § 553(a).

*Id.* at 1054. Following this Court's decision, other courts in this circuit also adopted *Norris* and explicitly rejected the United States Court of Appeals' overly broad holding and rationale of *International Cablevision, Inc. v. Sykes,* 75 F.3d 123, 131–132 (2d Cir.), *cert. denied sub nom., Noel v. International Cablevision, Inc.,* — U.S. ——, 117 S.Ct. 298, 136 L.Ed.2d 217 (1996). *See, e.g., TWC Cable Partners v. Cableworks, Inc.,* 966 F.Supp.

305, 310 (D.N.J.1997) (Orlofsky, J.) ("I join the Seventh Circuit, as well as several district courts in the Third Circuit and elsewhere, in concluding that § 605 governs only the interception of satellite or radio transmissions through the air and does not regulate the unlawful interception of communications which are sent over a cable network"); *Comcast Cablevision of Phila., L.P. v. Roselli,* No. CIV.A.96–2938, 1997 WL 36957, at *1–2 (E.D.Pa. Jan.30, 1997) (Waldman, J.) ("This court finds more persuasive the reasoning in *Norris* .... This court concludes that § 605 does not encompass the modification of converters or decoder boxes to intercept or assist in receiving television transmissions over wire or cable."). *But see Joe Hand Promotions v. Burg's Lounge,* 955 F.Supp. 42, 43 n. 2 (E.D.Pa.1997) (Joyner, J.) ("[Section 605] has been held to apply to the unauthorized publication of a cable television broadcast which originated as a radio transmission.")

In the instant case, the defendants argue that the plaintiff's Section 605 claims must be dismissed because the allegations are not pled in sufficient detail to provide the defendants with notice of the specific actions alleged to have given rise to the plaintiff's claims. (Defs.' Mem., at 3–4; Defs.' Reply, at 2–3.) Moreover, the defendants assert that even if the plaintiff's complaint is pled in sufficient detail, the claim must be dismissed because 47 U.S.C. § 553, and not 47 U.S.C. § 605, applies to the interception, reception, and publication of television broadcasts transmitted along a coaxial cable network. (Defs.' Mem., at 3–4; Defs.' Reply, at 2–3.) The plaintiff, on the other hand, rejects these arguments and asserts that its complaint is sufficiently pled, because the boxing matches were not solely transmitted via coaxial cable, and thus 47 U.S.C. § 605 applies. (Pl.'s Resp., at 1–3.) Specifically, the plaintiff contends that,

> [t]he same HBO broadcast was also nationally transmitted via DSS (mini-dish technology) [3] through a number of broad-

---

**3.** DSS or Direct Broadcast Satellite (DBS) refers to

> [a] new class of television services [which] have recently become available to views in the continental United States. These services al-

low households to receive television programming directly from satellites on small (18 inch to 3 foot diameter) satellite dishes which are not movable but instead are aimed at one position in the sky.

casters including USSB (United States Satellite Broadcasting) and also broadcast via C–Band or "full-sized" satellite receivers[4] as the signal to those units would have been distributed by companies such as Turner Satellite or Hughes Satellite on the evening in question.

(*Id.*) (footnotes added).

After reviewing the amended complaint, this Court finds that the plaintiff has sufficiently pled a cause of action under 47 U.S.C. § 605. In its amended complaint, the plaintiff alleges that the defendants received the HBO broadcast directly from a satellite transmission and published the boxing matches to their patrons.[5] (Am. Compl., at ¶¶ 17–18.) It does not plead, however, that the defendants directly received the broadcast from the coaxial cable network, and published that broadcast in violation of 47 U.S.C. § 553. In other words, the plaintiff has chosen to limit its recovery to violations under Section 605, rather than Section 553. Therefore, this Court finds that the amended complaint provides the defendants sufficient notice that the plaintiff intends to prove that the defendants received the boxing matches directly from the satellite, and not from the coaxial cable network, and published those matches to their patrons.

#### b. *Standing Requirement*

"[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). To decide this issue, a district court must look at both the constitutional limitations on its jurisdiction and prudential limitations on its exercise. *Id.*

#### (1) *Constitutional Standing Requirements*

"It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983). Furthermore, "when standing is challenged on the basis of the pleadings, [a court must] 'accept as true all material allegations of the complaint, and ... construe the complaint in favor of the complaining party.'" *Pennell v. San Jose,* 485 U.S. 1, 7, 108 S.Ct. 849, 855, 99 L.Ed.2d 1 (1988) (quoting *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975)). Therefore, to establish "the irreducible con-

---

The signals are digitally compressed, allowing several programs to be broadcast from a single satellite transponder thereby allowing up to 200 channels receivable with a dish pointed at one orbital position in the sky. Programming on the various services includes most major cable services, sports, Pay Per View (PPV) movies, audio services, and specialized "niche" programming aimed at smaller audiences.

Richard R. Peterson, *US DBS Frequently Asked Questions* (version 30, last modified Nov. 27, 1996) <http://www.dbsdish.com/dbs/dbsfaq.txt$.Satellites which utilize this technology operate on the Ku–Band (11.7 to 12.2 GHz), "are spaced nine degrees apart in space, and normally carry 16 transponders which operate at powers in excess of 100 watts." *DTH Terms* (visited Mar. 31, 1997) <http://www.sbca.com/dth_terms.html $.

4. Satellites utilizing the C–Band (3.7 to 4.2 GHz), can be spaced as close as two degrees apart in space, and normally carry 24 transponders operating at 10 to 17 watts each. Typical receive antennas are 6 to 7.5 feet in diameter. More than 250 channels of video and 75 audio services are available today from more than 20 C–

Band satellites over North America. Virtually every cable programming service is delivered via C-band.
*DTH Terms* (visited Mar. 31, 1997) <http://www.sbca.com/dth_terms.html$.

5. In its amended complaint, the plaintiff pleads as follows:

17. With full knowledge that the Program was not be received and exhibited by entities unauthorized to do so, the defendants and/or their agents, servants, workmen or employees of the Defendant[s] did unlawfully intercept, receive, and/or descramble said satellite signal and did exhibit the Program ... at the time of its transmission willfully and for purposes of direct or indirect commercial advantage or private financial gain.

18. That upon information and belief, Defendant[s] used an illegal satellite receiver, intercepted Plaintiff's signal and/or used an illegal cable. convertor box or device to intercept Plaintiff's broadcast which originated via satellite uplink and then retransmitted via satellite or microwave signal to various cable and satellite system.

(Am. Compl., at ¶¶ 17–18.)

stitutional minimum of standing," the United States Supreme Court requires that a plaintiff satisfy three elements: (1) the plaintiff must have suffered an "injury in fact"; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The party invoking federal jurisdiction bears the burden of establishing the elements of standing. *Id.*

 In this case, the defendants argue that the plaintiff lacks standing to sue, because "it fails to directly allege that it suffered actual damages and that its injury is fairly traceable the allegedly unlawful conduct." (Defs.' Mem., at 5.) A review of the amendment complaint, however, does reveal that the plaintiff satisfies the three constitutional elements. First, injury in fact requirement is satisfied because the alleged injury is " 'actual or imminent', [and] not 'conjectural' or 'hypothetical.' " *Id.* The defendants dispute this, and argue that the plaintiff fails to directly allege in its amended complaint that it suffered actual damages. Even though the plaintiff fails to directly allege that it suffered actual damages, the amended complaint, when read as a whole, implies that the plaintiff suffered an economic injury because it was not compensated for the publication of the boxing match, for which it had distribution rights. *See General Instrument Corp. of Del. v. Nu–Tek Elecs. & Mfg., Inc.*, No. CIV.A.93–3854, 1996 WL 442790, at *2 ("Economic injury may also establish standing."). The plaintiff also satisfies the causation requirement, because it alleges that its economic injury occurred when the defendants received and published the boxing matches to their patrons. (Am. Compl., at ¶ 17.) In other words, the plaintiff alleges that the defendants did not have the right to intercept, receive, and publish the HBO broadcast without entering into an agreement with the plaintiff, and that this conduct caused the plaintiff's injury. Finally, the plaintiff satisfies the redressability requirement because it seeks monetary damages to compensate it for the injury that it has alleg-

edly suffered. (*Id.* at ¶ 22.) If the defendants were prohibited from receiving and using the satellite signals, they would be required to pay fees to the plaintiff in order to legally receive and publish the boxing match to the patrons. Therefore, the remedy requested by the plaintiff would redress its injury, and further the purposes of Section 605. *See American Television & Communications Corp. v. Floken, Ltd.*, 629 F.Supp. 1462, 1472 (M.D.Fla.1986). Consequently, this Court concludes that the plaintiff has satisfied all three constitutional requirements for standing.

### (2) *Prudential Standing Requirements*

 In addition to satisfying the constitutional standing requirements, a plaintiff also must satisfy the prudential standing requirements "that are part of judicial self-governance." *UPS Worldwide Forwarding, Inc. v. United States Postal Serv.*, 66 F.3d 621, 626 (3d Cir.1995) (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136), *cert. denied*, —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 210 (1996). The prudential standing rules require that:

> (1) a litigant "assert his [or her] own legal interests rather than those of third parties," (2) courts "refrain from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,' " and (3) a litigant demonstrate that her interests are arguably within "the zone of interests" intended to be protected by the statute, rule or constitutional provision on which the claim is based.

*Id.* (quoting *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 538 (3d Cir.1994) (citations omitted)). Nevertheless, even if a party is barred by the prudential standing rules, Congress may confer standing on that party, if it satisfied the constitutional standing rules. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). In other words, "so long as [the constitutional standing] requirement is satisfied, persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others, and,

indeed, may invoke the general public interest-in support of their claim." *Id.* One way Congress may confer that standing is by "enact[ing] a special 'person aggrieved' statute, allowing a plaintiff to act as a 'private attorney general.'" *Nu–Tek Elecs.,* 1996 WL 442790, at *3 (quoting *Ozonoff v. Berzak,* 744 F.2d 224, 228 (1st Cir.1984) (citations omitted)). Thus, when confronted with a this type of statute, a court must liberally construe the phrase "person aggrieved" to confer broad standing. *Id.*

■ As set forth above, Section 605 specifically targets the unauthorized interception, reception, and publication of a radio communication. 47 U.S.C. § 605(a) (1991). In the earlier opinion, this Court determined that the publication of signals received directly from a satellite transmission fall under the auspices of § 605. Furthermore, Congress has provided that "any person aggrieved" by any violation of § 605(a) may bring a civil action in a United States district court. 47 U.S.C. § 605(e)(3)(A) (1991 & Supp.1997). The term "any person aggrieved" is defined to "include any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming...." 47 U.S.C. § 605(d)(6) (1991 & Supp.1997). This is further supported by the legislative history of the 1984 amendments to Section 605:

> [T]he term "any person aggrieved" shall be broadly interpreted by the courts in such cases and shall include those with any rights in the intercepted radio communications. Such persons would include but are not limited to, owners of the programming being transmitted as well as senders of the signal embodying the programming transmitted. Thus, the Committee amendment provides an explicit right of action for any person aggrieved by the violations of Section [605(a)].

H.R.Rep. No. 934, 98th Cong., 2d Sess., 83, *reprinted in* 1984 U.S.C.C.A.N. 4750.

In this case, the plaintiff is an aggrieved person for purposes of Section 605, because it has a proprietary right to the distribution of the HBO broadcast. Therefore, if it can prove that the defendants received the boxing matches directly from the satellite, rather than the coaxial cable network, the plaintiff has standing to sue under Section 605.

**2. *State Law Claims***

■ In its amended complaint, the plaintiff alleges that the defendants are liable for conversion and interference with prospective economic advantage. (Am. Compl., at ¶¶ 24–28.) The defendants, however, urge for a dismissal of these state law claims, because there is no reasonable basis for the Court to exercise supplemental jurisdiction. (Defs.' Mem., at 7; Defs.' Reply, at 5.)

■ Pursuant to § 1367, this Court may exercise supplemental jurisdiction over state law claims. However, the Court may decline supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (1993). The Court may properly decline to exercise supplemental jurisdiction and dismiss the state claims if any one of these applies. *See Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277, 1284 (3d Cir.1993).

■ The Courts in this district "ordinarily decline to exercise supplemental jurisdiction over state law claims when the federal claims are dismissed." *Eberts v. Wert,* 1993 WL 304111, at *5 (E.D.Pa. Aug. 9, 1993), *aff'd,* 22 F.3d 301 (3d Cir.1994) (table). In the instant case, this Court has determined that the plaintiff may proceed on its federal cause of action. Thus, it is appropriate at this time to exercise supplemental jurisdiction over the remaining state law claims.

**III. *CONCLUSION***

For the reasons set forth above, this Court concludes that the plaintiff has sufficiently

pled a cause of action under 47 U.S.C. § 605, and thus has standing to sue. Furthermore, because the plaintiff has successfully pled a federal cause of action, this Court will exercise supplemental jurisdiction over the remaining state law claims. Accordingly, the defendants' motion to dismiss the plaintiff's amended complaint is denied.