The AGES GROUP, L.P., Plaintiff,

v.

RAYTHEON AIRCRAFT COMPANY, INC.; Raytheon Aerospace Company, Inc.; The Wackenhut Corporation, Defendants.

No. CIV.A. 96–A–1514–S.

United States District Court,
M.D. Alabama,
Southern Division.

Aug. 11, 1998.

9. The emphasis on minors is certainly a reason- able emphasis.

D. Frank Davis, Gerald P. Gillespy, Mark
M. Lawson, Joseph W. Letzer, Burr & For-

man, Birmingham, AL, Kevin Hartney, Richard P. Murad, The AGES Group, LP, Boca Raton, FL, for The AGES Group, L.P.

John E. Goodman, Thad G. Long, Fred M. Haston, III, Bradley, Arant, Rose & White, Birmingham, AL, R. Steven Sinquefield, Raytheon Aircraft Co., Madison, MS, for Raytheon Aircraft Co., Inc., Raytheon Aerospace Co., Inc.

George G. Lynn, James L. Goyer, III, Kevin W. Patton, Maynard, Cooper & Gale, P.C., Birmingham, AL, for The Wackenhut Corp.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

## I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment filed by Defendant Wackenhut Corporation ("Wackenhut") on May 29, 1998 (Doc. # 80), and on a Motion to Strike filed by Wackenhut on July 6, 1998 (Doc. # 105).

The Plaintiff, the AGES Group, L.P. ("AGES") filed a Complaint in this court on October 6, 1996 bringing claims against Wackenhut and against Raytheon Aircraft Company, Inc. and Raytheon Aerospace Company, Inc. (collectively "Raytheon").[1] AGES subsequently filed an Amended Complaint on September 29, 1997. The claims brought against Wackenhut include a claim for violation of federal and state surveillance statutes (Count I), tortious interference with business relations (Count IV), conversion (Count V), violation of the Alabama Trade Secrets Act (Count VI), and conspiracy (Count VII). Counts II and III are for claims against Raytheon only.

Wackenhut filed a Request for Hearing and Notice of Intent to Offer Evidence in Support of Summary Judgment on May 29, 1998. On July 30, this court issued an Order denying the Request and giving Wackenhut until August 10, 1998 to file with the clerk of the court any of the evidence discussed in its Request that it wished this court to consider. No such evidence has been filed.

For the reasons to be discussed, Wackenhut's Motion for Summary Judgment is due to be GRANTED in part and DENIED in part.

## II. FACTS

The submissions of the parties establish the following facts:

AGES is a provider of aviation parts and services. Raytheon is a competitor of AGES in the aircraft maintenance and support business. Up until 1995, Raytheon had the Army, Navy, Air Force Life Cycle Contractor Support ("LCCS") contract for maintenance of C–12 aircraft. In 1995, the United States competitively bid this contract. AGES competed with Raytheon for the entire LCCS contract.

In preparing its proposal, AGES hired several companies and subcontractors and eventually submitted a bid for the LCCS contract. On July 3, 1996, the government requested a Best and Final Offer from AGES and Raytheon to be submitted by July 22, 1996. AGES's final bid was being put together by The Libertatia Associates, Inc. ("TILA") in Slocomb, Alabama.

Steve Patterson, Director of New Business Planning and Marketing for Raytheon, spoke by telephone with Michael Verrastro, National Director of Investigations for Wackenhut, and requested a surveillance on a location in South Alabama, specifically the TILA office in Slocomb, Alabama. Michael Verrastro Deposition, page 62, lines 10–22. Wackenhut contends that this was only to be video surveillance. Wackenhut sent investigators to Slocomb, Alabama on Thursday, July 18, 1996. George Harris Deposition, pages 72–73. Initially, George Harris of Wackenhut sent investigators Bridget Hopkins and Cynthia Pendleton to Slocomb, Alabama. George Harris Deposition, pages 72–73. Bridget Hopkins drove a white Camaro and Cynthia Pendleton drove a red Camaro. Cynthia Pendleton Deposition, page 52, lines 14–16 and Bridget Hopkins Deposition, page 53, lines 13–19. The investigators took two

---

1. Raytheon filed a separate Motion for Summary Judgment after Wackenhut's Motion was filed. Raytheon's Motion will be addressed in a separate order at a later date.

cars so that they could both conduct surveillance from one car, but could change cars to avoid detection. Cynthia Pendleton Deposition, page 28, lines 14–22. These investigators parked whichever car they were using to conduct surveillance across the street from TILA and conducted surveillance from there. *Id.* at page 30, lines 10–12.

At some point during the day on July 18, 1996, Steve Patterson spoke with George Harris of Wackenhut and asked that the surveillance be expanded to include Science Applications International Company in Daleville, Alabama. George Harris Deposition, page 84. On Friday, July 19, George Harris sent Terry Yelvington to accompany Cynthia Pendleton to the Daleville location, while Bridget Hopkins remained in Slocomb, Alabama. Terry Yelvington Deposition, page 18. On Saturday, July 20, George Harris instructed Wackenhut investigators Rebecca Cox and Cheryl Kirkland to conduct surveillance at the Slocomb and Daleville locations. Rebecca Cox Deposition, page 87.

These Wackenhut investigators have testified that while they conducted the surveillance requested by Raytheon, they had only visual surveillance equipment and they had no eavesdropping or wiretapping equipment with them. *See* Cynthia Pendleton Deposition, page 114, lines 8–16; Bridget Hopkins Deposition, page 114, lines 16–23; Terry Yelvington Deposition, pages 77–79; Rebecca Cox Deposition, page 153, lines 4–9; Cheryl Kirkland Deposition, page 142, lines 12–20. Wackenhut investigators also stated that they did not wear headphones nor witness any other Wackenhut investigator wearing earphones or headsets. *See e.g.,* Cynthia Pendleton Deposition, page 59, lines 2–20.

Residents of Slocomb, Alabama who observed the Wackenhut investigators dispute this testimony, however. James Hall testified that a woman in the passenger's side of the car he observed was wearing a headset and that the woman was speaking into a microphone. James Hall Deposition, pages 32–34. Jason Hall also testified that he saw a woman wearing a headset and that he saw a reel-to-reel recorder in the backseat of the car. Jason Hall Deposition, pages 12–13. Toma Hall, Harry Reeder, and Calvin Eng-

land also testified that they observed a woman in the vehicle with headphones on. Toma Hall Deposition, page 15, lines 9–13; Harry Reeder Deposition, page 41, lines 5–10; and Calvin England Deposition, page 40, lines 1–4. These disputed facts regarding the equipment used by Wackenhut's investigators largely form the basis of AGES's claims against Wackenhut.

### III. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* 477 U.S. at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* 477 U.S. at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* 477 U.S. at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538

(1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## IV. *DISCUSSION*

### A. Claim Based on Violation of Federal Surveillance Statutes

AGES contends that Wackenhut violated two separate provisions of the federal statute which governs the interception of wire, electronic, and oral communications. AGES states that Wackenhut violated § 2511, which provides in pertinent part that "any person who ... intentionally intercepts ... any wire, oral, or electronic communication ... shall be subject to suit as provided ...." 18 U.S.C. § 2511. The federal statute defines "intercept" as the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device. 18 U.S.C. § 2510(4); *see also Walker v. Darby,* 911 F.2d 1573 (11th Cir.1990). AGES also alleges that Wackenhut violated § 2512, which prohibits any person from "intentionally ... possess[ing] ... any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications." 18 U.S.C. § 2512.

■ Although AGES has pointed to two separate violations of the federal statute, to receive damages, AGES's claims must be for conduct which falls within the private right of action in § 2520. Section 2520 provides that any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of the statute may recover in a civil action from the person or entity which engaged in that violation such relief as may be appropriate. 18 U.S.C.

§ 2520. Therefore, even if AGES showed that there is a material question of fact as to whether Wackenhut possessed equipment which it knew or reasonably should have known was designed primarily for surreptitious acquisition of communications under § 2512, AGES must also create a question of fact as to whether communications were intercepted, disclosed, or intentionally used. *See Flowers v. Tandy Corp.,* 773 F.2d 585 (4th Cir.1985)(holding that the express language of § 2520 does not provide a cause of action for one who engages in conduct which is a violation of § 2512, but which is not violative of § 2511). In other words, a plaintiff does not have a private right of action against a defendant based on evidence that the defendant possessed surveillance equipment within the meaning of the statute. While proof of possession of equipment used to intercept oral communications could certainly be part of AGES' proof that oral communications were intercepted, possession of equipment will not support a separate claim against Wackenhut.

Wackenhut insists that the surveillance in which it engaged on behalf of Raytheon was not a violation of § 2511. Wackenhut argues that the surveillance it conducted was all observation, photography, and videotaping, which does not violate federal or state law. *See e.g., United States v. Taketa,* 923 F.2d 665 (9th Cir.1991)(videotaping which does not intercept the contents of any communications does not violate 18 U.S.C. §§ 2510–20). Wackenhut states that its investigators took only nine still photographs and nineteen minutes of video during the surveillance conducted on behalf of Raytheon. Wackenhut states that all of the investigators who were involved in the surveillance on Raytheon's behalf testified that they had no eavesdropping or wiretapping equipment with them. *See* Cynthia Pendleton Deposition, page 114, lines 8–16; Bridget Hopkins Deposition, page 114, lines 16–23; Terry Yelvington Deposition, pages 77–79; Rebecca Cox Deposition, page 153, lines 4–9; Cheryl Kirkland Deposition, page 142, lines 12–20. Wackenhut further contends that its Pensacola offices do not use or maintain any eavesdropping or

wiretapping equipment. George Harris Deposition, pages 199–200.

Wackenhut states that although the video has a minute and a half portion where "scratching" sounds have been recorded, this was due to the inadvertent failure of a sound "plug" designed to block the recording of sound and the recording is of sound within the surveillance vehicle. Bridget Hopkins Deposition, page 84, line 1; George Harris Deposition page 205, line 8.

AGES argues that there are multiple questions of fact which have been created by its evidence which must be resolved by a fact finder at trial. AGES points out that it strongly contests Wackenhut's position that Wackenhut's employees were only engaged in visual surveillance while conducting surveillance in Slocomb for Raytheon. AGES has provided the testimony of James Hall, a resident of Slocomb, who said that a woman in the passenger's side of the car he observed was wearing a headset and that the woman was speaking into a microphone. James Hall Deposition, pages 32–34. Jason Hall, son of James Hall, also testified that he saw a woman wearing a headset and that he saw a reel-to-reel recorder in the backseat of the car. Jason Hall Deposition, pages 12–13. Toma Hall and Harry Reeder, also of Slocomb, testified that they observed a woman in the vehicle with headphones on. Toma Hall Deposition, page 15, lines 9–13; Harry Reeder Deposition. Calvin England of Slocomb testified in his deposition that he observed a woman sitting in a Camaro with a car sunshade up and he assumed that she was listening to a stereo because she had earphones on. Calvin England Deposition, page 30, lines 15–22. James Johnson, of AGES, testified that he observed an oddity in a sunscreen which was on the dashboard of the Wackenhut employees' Camaro, in that the sunscreen made a perfect oval, as if something were attached to it, such as a reception device. Johnson Deposition, page 61. Johnson also stated that he saw two objects on the dashboard of the car: a telephoto lens

and an 8 to 12 inch long cylindrical microphone covered with some type of foam or soft covering. *Id.* at 61–62.

■ Wackenhut argues that much of the evidence which is currently before this court was considered by another judge in connection with a motion for a preliminary injunction brought by a different plaintiff. Wackenhut states that upon review of the evidence, this court, like that judge, should determine that there is no evidence of illegal surveillance. AGES, on the other hand, disputes that the determinations made in a proceeding brought by a different plaintiff have any bearing on this case. AGES states that none of the witnesses from Slocomb testified in that proceeding. AGES cites to *United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir.1994), for the proposition that findings of fact by a judge in another case are inadmissible hearsay. The court agrees that the findings made in the preliminary injunction proceedings brought by another plaintiff are not binding on this court and are in fact hearsay evidence which is not subject to any exception and, therefore, must not be considered by this court.

In addition, in the proceedings before this court, AGES has provided testimony from two persons experienced in electronics and/or electronic surveillance to establish the use of the devices testified to by the Slocomb residents. The admissibility of this evidence is contested by Wackenhut and is one basis [2] for the Motion to Strike filed by Wackenhut. In essence, Wackenhut asserts two reasons why this court should not consider the testimony of these individuals: one, because AGES failed to supplement its interrogatories and identify these witnesses as experts, and two, that these witnesses do not qualify as experts.

■ AGES argues that it has not failed to timely identify these witnesses as experts, but instead supplemented its answers to the

**2.** The other basis for this Motion is Wackenhut's contention that excerpts from an investigation of Wackenhut are irrelevant. For purposes of deciding the Motion for Summary Judgment, the court has not considered this report. Therefore,

the court finds that the Motion to Strike is due to be DENIED as moot. In making this determination, the court does not address whether or not this evidence is admissible for a later stage of this proceeding.

interrogatories within fourteen days, in compliance with this court's scheduling order, after it had identified these witnesses. AGES Brief in Opposition to Wackenhut's Motion to Strike, page 2. Wackenhut states that it did not receive any notification about these experts until their affidavits were offered in support of AGES opposition to summary judgment. However, AGES states that it received the resume of one of these witnesses on June 16, 1998, and employed that witness at a later date, and did not speak with the other expert until June 22, 1998. AGES filed its opposition in this court on June 29, 1998. Consequently, even if AGES did not file supplemental responses to interrogatories, the filing of the affidavits in support of the opposition to summary judgment within fourteen days of identifying the experts had the same effect and complied with this court's order.

■ As to the admissibility of the testimony as expert testimony, Wackenhut has argued that under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *General Electric Company v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997), the testimony offered by AGES does not rise above subjective belief or unsupported speculation. The testimony AGES seeks to offer comes from Don McCampbell who is the President of Musimatic, a company specializing in audio-video recording and presentations, and David Jellison, a former FBI special agent and current private investigator. Each witness offers his opinion based on his experience; McCampbell from his experience with electronics and Jellison from his experience with electronic surveillance. As the Eleventh Circuit has recently reconfirmed, "if an expert's testimony is based on his experience, and not on science, then such non-scientific expert testimony is not to be held to the *Daubert* standard." *Michigan Millers Mutual Insurance Corp. v. Benfield*, 140 F.3d 915, 920 n. 15 (11th Cir.1998). Therefore, Wackenhut's objection based on *Daubert* and *Joiner* is unavailing. In fact, expert testimony of the type relied on here is routinely relied on in criminal prosecutions of interceptions of wire, electronic, or oral communications. *See e.g., United States v.*

*Pritchard*, 773 F.2d 873 (7th Cir.1985)(FBI agent testified as an electronics expert that device was primarily useful for surreptitious interception of communications), *cert. denied*, 474 U.S. 1085, 106 S.Ct. 860, 88 L.Ed.2d 899 (1986); *United States v. Wynn*, 633 F.Supp. 595 (C.D.Ill.1986)(rejecting argument that witnesses were not qualified to render expert opinion as to whether device was primarily useful for surreptitious listening where witnesses were FBI agents with electronics or electronic communications background). Accordingly, Wackenhut's Motion to Strike based on failure to supplement interrogatories and *Daubert* and *Joiner* is due to be DENIED.

■ Wackenhut further argues that the opinions offered by McCampbell and Jellison do not create a question of fact because they are not entitled to any weight. Wackenhut states that these witnesses are offering nothing more than speculation based on questionable data that has been given to them. Wackenhut argues that McCampbell concluded that a shotgun microphone and an antenna were present in Bridget Hopkins' Camaro based solely on Johnson's description of the items which he saw. Wackenhut also states that Jellison offered an opinion that Hopkins was not engaged in a strictly legal surveillance operation, based solely on Johnson's description. Wackenhut urges this court not to rely on these witnesses, but to examine photographs taken by Johnson and determine that Johnson's photograph does not depict electronic surveillance equipment. Wackenhut also urges this court to conclude, upon examination of the car sunshade that Johnson was mistaken in saying that it concealed an antenna. In other words, Wackenhut urges this court to conclude that the expert testimony is not entitled to weight because of the quality of the deposition testimony upon which the expert opinions are based.

Whether or not AGES will ultimately prevail at trial, however, there is evidence before the court from several eye witnesses that Wackenhut's agents had headphones, a reel-to-reel recorder, an 8 to 12 inch microphone, and a concealed reception device. The ex-

pert testimony offered is, therefore, not based solely on the description of two devices by a single witness. In addition, even though the opinions offered are based on the testimony of other witnesses, especially at the summary judgment stage where the non-movant's evidence is taken as true, there is nothing inappropriate with offering an opinion from experience based on the facts which are before the court. Contrary evidence which Wackenhut may point to goes to the weight of this evidence, but, for summary judgment purposes, does not defeat the creation of a question of fact.

■ Wackenhut also argues that without Johnson's testimony, there is no claim for electronic surveillance because headphones and a reel-to-reel recorder are not primarily useful for covert listening. The court notes that Wackenhut has conflated two inquiries. AGES can establish that there was an interception of oral communications without having to demonstrate that the interception was made with devices primarily used for surreptitious listening. The "primarily useful" requirement is relevant to the possession allegation under § 2512, not the interception allegation under § 2511.

The connection between all of the devices which have been testified to, as explained by Jellison and McCampbell, is that these items are consistent with the type of equipment which would be used for receiving, monitoring, and recording voice communications or electronic signals. Affidavit of Jellison. McCampbell explained that a shotgun microphone generally must be used in conjunction with headphones to allow the listener to pinpoint the sound he or she wishes to hear and record. McCampbell Affidavit, ¶ 5. McCampbell also explained that a reel-to-reel recorder is generally recognized to have a high quality of audio recording and that the recorder described by Jason Hall is similar to a type of reel to reel recorder used by news organizations in conducting undercover investigative reporting. *Id.* at ¶ 7. McCampbell also stated that the videocameras used by the Wackenhut agents are not

generally used in conjunction with head-phones to pick up sound at a distance. *Id.* at ¶ 8. McCampbell stated that the use of a shotgun microphone, headphones, and a reel-to-reel recorder to pick up and record audio signals at a distance is commonly used in the video production industry. *Id.* at ¶ 8. Therefore, whether Johnson saw an antenna in the sunscreen or not, and whether the Plaintiff will proceed on this theory or not, the evidence presented creates a question of fact as to whether devices, such as a shot gun microphone and recorder, which can be used for surreptitious interception of oral communication, were used by Wackenhut agents when they conducted surveillance for Raytheon.

Wackenhut further contends that § 2511 requires specific intent to eavesdrop which has not been established by AGES, citing to *United States v. Schilleci,* 545 F.2d 519 (5th Cir.1977).[3] Therefore, Wackenhut argues, even though there is some evidence that sound was intercepted, i.e., the scratching sounds on the tape, there is no evidence that Wackenhut intended to intercept those sounds. Wackenhut argues that there is no evidence that, even if Wackenhut agents had equipment which could have intercepted communications, Wackenhut actually intercepted those communications.

■ AGES responds that the Eleventh Circuit has held that circumstantial evidence may establish a § 2520 claim. *See Scutieri v. Paige,* 808 F.2d 785, 790 (11th Cir.1987); *Cross v. State of Alabama,* 49 F.3d 1490, 1509 (11th Cir.1995). The circumstantial evidence in this case is that it is undisputed that Wackenhut was conducting some type of surveillance of TILA, and there is evidence that, while doing so, Wackenhut agents had equipment consistent with monitoring and receiving oral communications, but that these agents contend that they did not possess this equipment. There is also testimony that a Wackenhut agent was actually wearing the headset which, according to the evidence before the court, can be used to monitor oral communications which are received. In fact,

---

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

McCampbell stated in his Affidavit that the only equipment which was described by either eyewitnesses or Wackenhut agents that was present in the Wackenhut investigators' cars for which a headset would be used were the shot gun microphone and the reel-to-reel recorder, so that there would have been no surveillance-related reason to wear headphones unless the microphone and recorder, rather than video cameras, were being used. McCampbell Affidavit at ¶ 11. Therefore, while AGES has not provided evidence of conversations which were intercepted, the court cannot conclude that the circumstantial evidence provided would not allow a reasonable finder of fact to conclude that oral communications were intercepted by Wackenhut. *See Walker,* 911 F.2d at 1577 (plaintiff can raise a question of fact regarding interception of conversations without proving the contents of specific conversations). The question of fact raised as to the interception of oral communications satisfies the requirements of both § 2511 and § 2520.

In addition, there is evidence that AGES satisfies the requirement in § 2520 that the communication intercepted be an AGES communication. Johnson has stated in an Affidavit that on July 18, 19, and 20, 1996, during the time that TILA's offices were surveilled, he had numerous conversations with other employees or agents of TILA and/or AGES concerning the LCCS contract. Affidavit of James Johnson at ¶ 3. Of course, AGES will bear the burden of proof on these issues at trial, but whether or not that burden is ultimately met is not an appropriate question for the court at this time.

Given that there are questions of fact as to whether the devices testified to were present in the Wackenhut agents' vehicle, that there is testimony based on experience with this equipment that the equipment can be used to intercept communications in a covert manner, and that there is testimony from eyewitnesses who observed at least some of this equipment apparently being used by Wackenhut agents, the court concludes that there is a question of fact as to whether Wackenhut intentionally intercepted any wire, oral, or electronic communication under 18 U.S.C. § 2511 and the private right of action under 18 U.S.C. § 2520.

■ Wackenhut also disputes that AGES has suffered any damages. At least with respect to the alleged violation of the federal statute, there is a statutory provision for fees, if the plaintiff has suffered no actual damages, which is the greater of either $100 per day of the violation or $10,000. 18 U.S.C. § 2520(c)(2). Therefore, although AGES has provided some evidence which it contends supports a finding of actual damages, such evidence is not necessary to defeat summary judgment on the federal statutory claim.

## B. State Statutory Claims

### 1. Alabama Surveillance Statutes

■ AGES has brought several claims under the Alabama Code based upon Wackenhut's surveillance of TILA. In fact, there are four statutory provisions which AGES alleges Wackenhut violated. Alabama Code § 13A–11–31, prohibits intentionally using any device to eavesdrop. Eavesdrop means to overhear, record, amplify or transmit any part of the private communication of others without the consent of at least one of the persons engaged in the communication. Ala. Code § 13A–11–30 (1994). Alabama Code § 13A–11–32, prohibits intentionally engaging in surveillance while trespassing in a private place. A private place is a place where one may reasonably expect to be safe from casual or hostile intrusion or surveillance, but not a place to which the public or a substantial group of the public access. Ala. Code § 13A–11–30(2)(1994). Alabama Code § 13A–11–33 prohibits intentionally installing or placing a device in a private place with knowledge it is to be used for eavesdropping without permission of the owner. Alabama Code § 13A–11–34 prohibits possession of an eavesdropping device designed or commonly used for eavesdropping.

Before addressing AGES' claims under each statute, the court notes that Wackenhut has challenged AGES' ability to obtain money damages, even if these statutes were violated. AGES points out that under Alabama Code § 6–5–370, an injured party may recov-

**1320**

er civilly for violation of a criminal statute amounting to a felony without the criminal prosecution of the offender, for any injury to person or property. Wackenhut argues that only the purported violation of § 13A–11–33 is a felony; therefore, that is the only purported violation for which AGES could receive money damages.

AGES argues that it need not rely solely on § 6–5–370 because, under common law, there is a remedy for criminal violations which result in injury to person or property. *See Lollar v. Poe,* 622 So.2d 902 (Ala.1993). As Wackenhut points out, the common law remedy is not as broad as stated by AGES. It is also, however, not as narrow as stated by Wackenhut. The Alabama Supreme Court has explained that civil liability for acts which constitute a crime "will ensue only if the acts complained of violate the legal rights of the plaintiff, constitute a breach of duty owed to the plaintiff, or constitute some cause of action for which relief may be granted." *Smitherman v. McCafferty,* 622 So.2d 322 (Ala.1993). Wackenhut has argued that it did not have a duty to AGES, but neither party has addressed whether the acts complained of violated the legal rights of the plaintiff. The statutory sections at issue do not merely categorize particular conduct as being prohibited, but create a right in the citizens of the State of Alabama not to have private communications overheard, recorded, amplified, or transmitted without consent. The legal right protected by these statutes is referred to in the commentary to the Alabama Code as the individual's "right of privacy." Ala.Code § 13A–11–31, Commentary.

 Although not raised specifically with regard to these claims, Wackenhut also argues that AGES has failed to demonstrate that it has been injured in person or property. Wackenhut points out that AGES was awarded the contract over Raytheon and that Raytheon did not change any numbers in its bid as a result of Wackenhut's surveillance. AGES contends that it has suffered actual damages due to the costs incurred by TILA from the surveillance and the lawsuit in Florida as well as the costs of reporting to the government Wackenhut's purportedly illegal surveillance. AGES has cited no authority

for the proposition that these are properly recoverable items of actual damages. As AGES points out, the federal regulation requires that a contract specialist shall report any violation or possible violation. 38 C.F.R. § 603.104–11.

Wackenhut argues that AGES did not have to go beyond reporting this purported violation and finance two lawsuits. Wackenhut also contends that Raytheon hired Wackenhut to substantiate suspicion of illegal activity and that if AGES had bothered to substantiate its own allegations, it would not have incurred these expenses. The court agrees that the costs of lawsuits against Wackenhut and Raytheon do not appear to be proper considerations for actual damages. However, the regulatory requirement of reporting is not limited to substantiated violations, but also includes "possible violations." Accordingly, while AGES's actions in reporting may be subject to some mitigation of damages arguments at trial, the court concludes that the reporting requirement did cause AGES to incur some damage as a result of Wackenhut's and Raytheon's actions. Therefore, the court concludes that the damage issue raised by Wackenhut does not preclude AGES's claim based on the state eavesdropping statutes.

 As to the specific violations of the Alabama statute alleged by AGES, Wackenhut argues that AGES has failed to establish a violation of any of the Alabama anti-eavesdropping statutes. A violation of § 13A–11–31 is established if there is (1) a willful interception, (2) of oral communications uttered by a person exhibiting an expectation that the communication would be in private, (3) that such communication must have been made under circumstances justifying an expectation of privacy. *Blackmon v. State,* 449 So.2d 1264 (Ala.Crim.App.1984). As was discussed above, the court has concluded that there are genuine questions of material fact as to whether communications of AGES were intercepted by Wackenhut. AGES has also provided the Affidavit of Johnson to establish that he had an expectation of privacy when he was discussing the AGES contract and that when persons entered TILA whom he did not want to hear his conversation, he

stopped speaking about the contract. Affidavit of James Johnson. Consequently, the court concludes that there is also a question of fact as to whether this Alabama statute was violated.

■ Under Alabama Code § 13A–11–32, a person commits criminal surveillance if he or she engages in surveillance while trespassing in a private place. Wackenhut points out that the video surveillance conducted of TILA was done from a car in a public street and so did not violate this statute. Indeed, the commentary to the Alabama Code states that "mere observation from a public street" does not violate the statute. Ala.Code § 13A–11–32, Commentary. However, AGES argues that there is evidence that Wackenhut trespassed on the property of TILA because witnesses testified that a woman came into TILA and removed papers and that she was an agent of Wackenhut. While these facts, if proven, might be violative of another right or statute, the court has been pointed to no authority which would establish that walking into a building and removing papers meets the definition of surveillance; namely, that there is secret observation of the activities of another person for the purpose of spying upon and invading the privacy of the person observed. Ala.Code § 13A–11–20(3)(1994). Were the statute broadly interpreted so as to include these facts, all theft of proprietary documents could fall within the eavesdropping statute. Therefore, AGES has failed to create a question of material fact as to whether there was a violation of § 13A–11–32.

■ AGES also alleges that there is evidence that Wackenhut violated Alabama Code § 13A–11–33, which prohibits installing of an eavesdropping device in a private place. Wackenhut contends that there is no evidence that any Wackenhut agent engaged in any conduct which meets this statutory section. AGES argues in response that witnesses observed Wackenhut agents with eavesdropping equipment so that this statute is satisfied. However, the court finds that the evidence presented does not create a question of fact as to whether an eavesdropping device was installed in a private place. A private place is a place where one

may reasonably expect to be safe from intrusion or surveillance, but not a place to which the public has access. Ala.Code § 13A–11–30(2)(1994). The evidence offered by AGES is that there was eavesdropping equipment within the car of the Wackenhut agents. While there is a dispute as to whether equipment was used to eavesdrop, there is no evidence that meets the plain language of the statute that an eavesdropping device is placed or installed in a private place. Consequently, AGES has failed to create a question of fact as to the purported violation of this statute.

■ Finally, AGES argues that Wackenhut violated Alabama Code § 13A–11–34 because there is evidence that Wackenhut agents possessed eavesdropping equipment. To proceed on this claim, however, AGES must have evidence that it has been injured in person or property by violation of this criminal statute. *See Lollar v. Poe*, 622 So.2d 902 (Ala.1993). That is, mere possession of eavesdropping equipment can constitute a criminal violation under Alabama law, but to recover damages, AGES must show that possession of the equipment by Wackenhut injured AGES. While AGES has presented evidence that it has been injured by use of such equipment by Wackenhut, the court does not find that this injury flowed from mere possession of eavesdropping equipment by Wackenhut. Accordingly, the court concludes that Wackenhut is entitled to summary judgment on this claim.

### 2. Alabama Trade Secrets Act

■ AGES next asserts a state law claim based on violation of the Alabama Trade Secrets Act. Under Alabama Code § 8–27–3(1), a person who discloses or uses the trade secret of another, without privilege to do so, is liable for misappropriation of the trade secret if the person discovered the trade secret by improper means. Wackenhut argues that there is no evidence that Wackenhut agents trespassed or stole documents and that the evidence establishes that these agents only conducted visual surveillance from a public place.

AGES relies on the evidence previously discussed in connection with other claims to establish that there is a question of fact as to whether Wackenhut agents were using improper means such as eavesdropping in order to intercept oral communications and that a Wackenhut agent was seen leaving TILA with papers in her hands.

While it may be that there is a question of fact as to whether oral communications were intercepted, to violate this statute intercepted information would have to meet the definition of "trade secret" under Alabama law. Under Alabama law, a "trade secret" is used or intended for use in a business; is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique or process; is not publicly known; cannot be readily ascertained or derived from publicly available information; is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and has significant economic value. Ala.Code § 8–27–2 (1993). There has been no evidence presented to this court which suggests that any oral communications which might have been intercepted meet the definition of "trade secret."

▮▮▮ AGES claims, however, that a Schedule B appendix to their bid for the government contract was stolen by Wackenhut agents and given to Raytheon. It is apparently undisputed that Raytheon is in possession of this Schedule B, but Wackenhut contends that Raytheon's copy was obtained through a government de-briefing.

Louis Berecz prepared the Schedule B. He testified that he completed Schedule B on either Wednesday, July 17 or Thursday, July 18, 1996. Louis Berecz Deposition, pages 126–28. Berecz said that he discovered his computer had failed at 7:00 a.m. the morning after he finished preparing Schedule B. *Id.* at page 126. He testified that he immediately took the computer to a repair shop and did not return until that evening. *Id.* at pages 94–5.

Wackenhut has stated that according to the videotape footage of TILA, Louis Berecz left the office on July 18, 1996. Wackenhut argues, therefore, that Louis Berecz was in the office preparing Schedule B during the

day on July 18, and that he did not get his computer fixed until July 19. This is significant, according to Wackenhut, because Tem Tew stated that he saw a woman leave TILA with papers on July 18 at 8:30 or 9:00 a.m. Tem Tew Affidavit. Wackenhut argues that this testimony establishes that the woman whom AGES contends was a Wackenhut agent who stole papers from TILA did so before the Schedule B was even completed.

AGES responds that Wackenhut has attempted to dispute the Vice President of TILA, Barbara Price's, testimony as to when the Schedule B was completed. Upon review of the portion of Barbara Price's deposition which has been provided to the court, it appears that she has testified that the Schedule B was completed in time to make the Government's copy on Wednesday night, which would have been July 17, and that other copies were made on Thursday and Friday. Barbara Price Deposition, pages 59–60. Barbara Price also testified that AGES's Schedule B was discovered missing in August. Barbara Price Deposition, page 221, lines 7–9.

There has also been evidence produced from eyewitnesses, although they do not agree on the date upon which they made their observations, that a woman left the TILA offices with papers in her hand, walked over to the Camaro occupied by Wackenhut investigators and spoke to someone in that car, got into another vehicle occupied by another person and left, and that this car was followed by the Camaro. James Hall Deposition, pages 55–57, 59; Jason Hall Deposition, pages 14–15.

The court finds that there is enough evidence to create a question of fact as to whether the woman observed leaving TILA with papers in her hand was working as a Wackenhut agent. A reasonable inference has also been raised, based on evidence that the Schedule B was discovered missing and disputed facts as to when it was completed, that Schedule B was taken from TILA by the woman seen leaving the TILA office. Accordingly, Wackenhut's argument as to AGES's trade secret claim on the grounds

that there is no evidence of a theft of trade secrets by trespass is unavailing.

### C. Tort Claims Under Alabama Law

#### 1. Tortious Interference With Business Relations

■ AGES alleges that Wackenhut has tortiously interfered with AGES' business relations with its subcontractors and the government. To establish a claim for tortious interference with contract, AGES must demonstrate (1) the existence of a contract or business relations; (2) the defendant's knowledge of the relationship; (3) intentional interference in that relationship by the defendant; (4) an absence of justification for the interference; and (5) damage to plaintiff as a result of defendant's interference. *Soap Company v. Ecolab*, 646 So.2d 1366 (Ala. 1994).

■ Wackenhut contends that AGES has failed to establish at least two elements of the claim: intentional interference and resulting damage. Wackenhut states that there is no evidence of interference because the surveillance conducted consisted entirely of visual surveillance and that all that it received was still photographs, some videotaped footage, and daily activity reports.

Wackenhut also argues that even if there is a question of fact as to whether there was interference, there is no evidence of resulting damage. AGES beat out Raytheon for the contract and the document which AGES contends Raytheon received from Wackenhut agents or the information which AGES contends was intercepted through surveillance was not relied on by Raytheon in making its bid.

Although the court has found that AGES has created a disputed issue of fact as to whether Wackenhut officials intercepted oral communications and removed an AGES document, the court cannot agree that AGES has demonstrated that there is a material issue of fact as to the tortious interference with contract or business relations claim. While there is evidence that Raytheon, through Wackenhut, attempted to intercept information and to remove documents, there is no evidence that any information was given to the government to induce it not to contract with AGES, nor that Raytheon was advantaged by receiving information, nor that Raytheon changed its bid in reliance on information allegedly obtained. In fact, it is undisputed that AGES was awarded the contract which Raytheon sought. Therefore, even if Wackenhut intercepted communications and removed an AGES document, there is no evidence to establish that this interception interfered with business relations. *See Gidwitz v. Stirco, Inc.*, 1987 WL 18917, No. 84–C–1126 (N.D.Ill. Oct. 20, 1987)(plaintiff failed to plead inducement of breach of contract where alleged actions of alleged interference that did not result in a breach of contract or termination of a business relationship); *Advanced Power Systems, Inc. v. Hi–Tech Systems, Inc.*, 1992 WL 97826, No. 90–7952 (E.D.Pa. April 30, 1992)(no claim for tortious interference where plaintiff alleged that defendant had quote log and other trade secrets but plaintiff identified no loss).

In addition, even if AGES established that Wackenhut tortiously interfered in AGES's business relations, AGES has not established that it suffered any damages. The court is persuaded that costs incurred because of a reporting duty under federal regulation might stem from illegal surveillance so as to constitute damages resulting from the surveillance. The court cannot see that there is enough of a connection, however, for these costs to be related to interference with any business relations between the government and AGES or AGES and other contractors. Consequently, the court concludes that Wackenhut is due to be granted summary judgment on this claim.

#### 2. Conversion

■ Under Alabama law, to establish a claim for conversion, a plaintiff must show a wrongful taking, an illegal assumption of ownership, an illegal use of misuse of another's property or a wrongful detention or interference with another's property. *Birmingham–Jefferson County Transit Authority v. Arvan*, 669 So.2d 825, 828 (Ala. 1995).

■ AGES claims that Wackenhut and Raytheon stole AGES documents and confidential information relating to AGES's

proposal for the LCCS contract which constituted a conversion of property. More specifically, AGES claims that a Wackenhut agent came into the TILA offices and took a document denominated Exhibit B to AGES's proposal.

In response, Wackenhut contends that none of its agents entered the TILA offices or stole any documents. Wackenhut relies on evidence of the timeline of events established in deposition testimony in an attempt to demonstrate to this court that there is no evidence to substantiate AGES's claims. Wackenhut points out that Barbara Price, TILA's Vice President, testified that she discovered that Schedule B to Volume III of AGES's Best and Final Offer was missing from TILA's library shelf on August 16, 1996. As discussed above, however, the evidence surrounding the completion of Schedule B is sharply disputed. There is evidence from Barbara Price that the government's copy of the proposal, apparently including Schedule B, was completed on Wednesday. There is evidence from the person who prepared Schedule B that it was completed either Wednesday or Thursday before a trip to the computer repair shop was made, although there is also videotape evidence that this person's repair shop trip was not made until Friday. There is evidence of eyewitnesses that a woman left the TILA building with papers in her hands, spoke to persons in the Wackenhut vehicle, got into another vehicle, and was followed by the Wackenhut vehicle. The only papers which have been identified as missing are those which comprise Schedule B. While there are certainly multiple questions of fact on this issue, all of the evidence construed most favorably in light of the non-movant allows for a reasonable inference to be drawn that a Wackenhut agent entered the TILA office and left with some papers. The evidence also allows for the

inference to be drawn that the papers carried by this agent were the Schedule B papers, since Schedule B could have been completed by that time and since the Schedule B papers are the only ones which have been identified as missing and since it is uncontested that Raytheon has a copy of Schedule B. Therefore, at the summary judgment stage, this court concludes that there are genuine disputes of material facts which preclude the entry of summary judgment on this claim.

### 3. Conspiracy

 Under Alabama law, a conspiracy is a combination to accomplish an unlawful end or to accomplish a lawful end by unlawful means. *Scott v. Commonwealth Land Title Ins. Co.*, 518 So.2d 102 (Ala.1987). AGES has argued that Wackenhut and Raytheon conspired together as evidenced by the fact that Raytheon hired Wackenhut[4] to do surveillance and conferred with Wackenhut throughout the surveillance.

Wackenhut points out that, in a conspiracy claim, the conspiracy itself furnishes no cause of action, but relies on the underlying wrong committed. *Id.* 518 So.2d at 104. Wackenhut contends that no underlying wrong has been established in this case. However, as has been explained in relation to the other claims based on the alleged underlying wrongs in this case, at this stage in the proceedings, AGES has provided sufficient evidence for a reasonable fact finder to conclude that at least one underlying wrong occurred.

Wackenhut also argues that the only evidence of a "combination" in this case is that Steve Patterson requested and George Harris provided legal, visual surveillance from a public street. In other words, Wackenhut contends that there is no evidence of any agreement to do an unlawful act.

---

4. No challenge has been made based on any agency relationship between the two entities. *See Williams v. Marcum*, 519 So.2d 473 (Ala. 1987)(there is no conspiracy where the parties to the alleged conspiracy are the corporation and its agent and the corporation's liability is predicated on respondeat superior). At this stage in the proceedings, however, the court finds that, based on the evidence and arguments currently before it, the relationship between the two separate corporate entities is distinguishable from situations in which there is an alleged intercorporate relationship, so that the relationship does not bar a conspiracy claim at the summary judgment stage. *See Pink Supply Corp. v. Hiebert. Inc.*, 788 F.2d 1313 (8th Cir.1986)(explaining within the context of an anti-trust claim that there is a difference, for purposes of determining capacity to conspire, between distinct corporate entities joined together for particular conduct and two corporate entities engaged in an ongoing relation).

Alabama courts recognize that the "existence of a conspiracy must often be inferentially and circumstantially derived from the character of the acts done, the relation of the parties, and other facts and circumstances suggestive of concerted action." *Scott*, 518 So.2d at 104. The Alabama Supreme Court has stated that it acknowledges "that a great quantum of detail may not be required to prove the formation of a conspiracy, and that because of its secretive nature, proof of a conspiracy must often be inferentially and circumstantially derived from the character of the act done." *Id.*

The evidence in this case indicates that Steve Patterson of Raytheon approached Wackenhut to do surveillance. Michael Verrastro Deposition, page 62, lines 10–22. The evidence further indicates that Steve Patterson stayed in contact with George Harris of Wackenhut, the person who assigned the investigators to do the surveillance. George Harris Deposition, pages 97–98. In fact, George Harris stated that during the multiple phone conversations he had with Steve Patterson he was keeping Steve Patterson up-to-date on what was going on in the surveillance. *Id.* at 98. The court concludes that the evidence provided including Raytheon's hiring Wackenhut and contact with Wackenhut during the surveillance, and the disputed facts involving Wackenhut's actions during the surveillance are sufficient evidence to raise a question of fact as to the existence of a conspiracy between Wackenhut and Raytheon so as to preclude summary judgment on the conspiracy claim. Accordingly, Wackenhut is not entitled to summary judgment on this claim.

### V. *CONCLUSION*

For reasons discussed, the court finds that AGES has raised sufficient questions of material fact so as to preclude summary judgment on its claims under Count I for violation of 18 U.S.C. § 2511 and for violation of Alabama Code §§ 13A–1–31; under Count V for conversion, under Count VI for violation of the Alabama Trade Secrets Act, and under Count VII for conspiracy. The court also concludes that AGES has failed to create a genuine issue of material fact as to its claim under Count I for violation of 18 U.S.C. § 2512 and Alabama Code §§ 13A–11–32, 13A–11–33, 13A–11–34 and under Count IV for tortious interference with business relations. Wackenhut's Motion for Summary Judgment is, therefore, due to be GRANTED in part and DENIED in part.

Accordingly, it is ORDERED that

1. Wackenhut's Motion to Strike is DENIED.

2. Wackenhut's Motion for Summary Judgment is GRANTED as to Count I for violation of 18 U.S.C. § 2512 and Alabama Code §§ 13A–11–32, 13A–11–33, 13A–11–34 and under Count IV for tortious interference with business relations.

3. Wackenhut's Motion for Summary Judgment is DENIED as to Count I for violation of 18 U.S.C. § 2511 and for violation of Alabama Code §§ 13A–1–31; Count V for conversion, Count VI for violation of the Alabama Trade Secrets Act, under Count VII for conspiracy. The case will proceed against Wackenhut on these claims.