BLACK, Circuit Judge,
dissenting:
I agree with Chief Judge Edmondson that, although Simpson v. Simpson, 490 F.2d 803 (5th Cir.1974),[1] should be overturned, the Court’s new rule clearly overruling prior circuit precedent should not be applied retroactively. I write separately, however, to state that, in my view, the retroactivity analysis turns on the punitive damages to which the Court’s decision subjects Mr. Glazner,[2] and to illustrate how Mr. Glazner’s sudden retroactive exposure to punitive damages violates fundamental ex post facto principles incorporated into the Due Process Clause.
Courts repeatedly have recognized punitive damages are quasi-criminal in nature. See Landgraf v. USI Film Prods., 511 U.S. 244, 281, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994) (“The very labels given ‘punitive’ or ‘exemplary’ damages, as well as the rationales that support them, demonstrate that they share key characteristics of criminal sanctions.”); In re Exxon Valdez, 270 F.3d 1215, 1245 (9th Cir.2001) (stating that “punitive damages are quasi-criminal”); cf. Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 19, 111 S.Ct. 1032, 1044, 113 L.Ed.2d 1 (1991) (“[Punitive damages] have been described as quasi-criminal.” (citation omitted)). Retroactively applying the Court’s new rule would subject Mr. Glazner to quasi-criminal liability. Consequently, I think the Supreme Court’s Due Process Clause jurisprudence in the criminal context counsels against retroactivity.
In the criminal context, the Supreme Court has stated the Ex Post Facto Clause “does not of its own force apply to the Judicial Branch of government.” Marks v. United States, 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977) (citation omitted). Nevertheless, “the principle on which the Clause is based[,] the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties[,] is fundamental to our concept of constitutional liberty.” Id. at 191, 97 S.Ct. at 992-93 (citations omitted). Ex Post Facto principles are “protected against judicial action by the Due Process Clause of the Fifth Amendment.” Id. at 192, 97 S.Ct. at 993. A judicial alteration violates fair warning principles and should not be applied retroactively when it is “unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.” Rogers v. Tennessee, 532 U.S. 451, 462, 121 S.Ct. 1693, 1700, 149 L.Ed.2d 697 (2001) (citation and quotations omitted). In light of our strict adherence to stare decisis and the prior panel precedent rule, there was no fair warning that we would overrule Simpson and retroactively apply a new rule to make Mr. Glazner’s conduct unlawful.
In Simpson, the Court held that Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. *1231 §§ 2510-22, has an interspousal exception for wiretapping in the marital home. 490 F.2d at 810. That ruling remained in effect, unaltered, until today. To be sure, other circuits questioned and disagreed with Simpson. Such disagreement did not, however, give Mr. Glazner fair warning that we would overturn our decision and retroactively apply a new rule to make his otherwise lawful conduct unlawful.[3]
Moreover, state law did not provide any fair warning. The law of another sovereign simply could not give fair warning to Mr. Glazner that he could be hailed into federal court for punitive damages under a federal statute that, until today, we interpreted not to apply to his conduct. Cf. Bouie v. City of Columbia, 378 U.S. 347, 359-60, 84 S.Ct. 1697, 1705-06, 12 L.Ed.2d 894 (1964) (“It would be a rare situation in which the meaning of a statute of another State sufficed to afford a person ‘fair warning’ that his own State’s statute meant something quite different from what its words said.”). To hold otherwise would open floodgates to numerous interpretive questions. Could fair warning be deemed given only by state statutes, or could it also be deemed given by state common law, regulatory law, and county and municipal ordinances? Must a court considering the fair warning issue interpret state statutes and common law? Would such courts have to certify questions of state law to state supreme courts?
The state statutes potentially implicated by Mr. Glazner’s conduct illustrate the problems inherent in such an approach. For example, Ala.Code § 13A-11-33 provides:
A person commits the crime of installing an eavesdropping device if he intentionally installs or places a device in a private place with knowledge it is to be used for eavesdropping and without permission of the owner and any lessee or tenant or guest for hire of the private place.
Ala.Code § 13A-11-33(a) (emphasis added). I express no view as to the merits, but an argument certainly could be made that Mr. Glazner had “permission of the owner” and therefore did not violate § 13A-11-33 since he presumably was an owner of the marital residence. Moreover, in its opinion, the Court cites Ala.Code § 6-5-370 to suggest that Mr. Glazner’s conduct exposed him to civil liability. That provision, however, “does not create a cause of action; rather, it merely allows a plaintiff to commence a civil action even if the plaintiff does not pursue criminal prosecution of the defendant.” Lewis v. Fraunfelder, 796 So.2d 1067, 1070 (Ala.2000). There may be a remedy under Alabama common law. See Ages Group, L.P. v. Raytheon Aircraft Co., Inc., 22 F.Supp.2d 1310, 1320 (M.D.Ala.1998). Still, it is exactly this type of analysis that highlights the unworkability of an approach to the fair warning analysis that looks to the laws of another sovereign.
In conclusion, Mr. Glazner simply had no fair warning that his conduct would subject him in federal court to the quasi-criminal sanction of punitive damages. Consequently, the Court’s opinion denies due process to Mr. Glazner. On this basis, I respectfully dissent.

. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

. In footnote 3 of his dissent, Chief Judge Edmondson states that his reasoning does not depend on the availability of punitive damages. If punitive damages were not available, I think the Court’s Chevron analysis would carry the day.

. The circuit courts of appeals frequently disagree in interpreting statutes. That certainly does not mean a litigant should not rely on the law of the circuit in which he is litigating.