**DIRECTV, INC., Plaintiff,**

v.

**Floyd BARNES, Defendant.**

**No. 1:02–CV–883.**

United States District Court,
W.D. Michigan,
Southern Division.

Feb. 2, 2004.

Angela M. Brown, Angela Emlet–Dardas, Janice Keays Smith, Lansing, MI, for Plaintiff.

Fredrick W. Jensen, Jr., for Defendant.

## OPINION

QUIST, District Judge.

Plaintiff, DIRECTV, Inc. ("DIRECTV"), has sued Defendant, Floyd Barnes ("Barnes"), alleging that he violated the Federal Communications Act of 1934, 47 U.S.C. § 605, the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986, and the Communications Assistance for Law Enforcement Act of 1994, 18 U.S.C. §§ 2510–22 (the "Wiretap Act"), and Michigan common law by purchasing and using access cards and other devices ("Pirate Access Devices") to decrypt, receive, and view DIRECTV's encrypted satellite transmissions of television programming. DIRECTV seeks injunctive relief, statutory damages, or, in the alternative, compensatory and punitive damages, attorney fees and costs. Now before the Court are DIRECTV's motion for summary judgment on its claim under the Wiretap Act and Barnes' motion for summary judgment on all of DIRECTV's claims.

### I. Facts

DIRECTV is one of the nation's largest providers of satellite television programming. DIRECTV delivers its broadcasts throughout the United States to customers who have paid a subscription fee. In order to receive the broadcasts, a DIRECTV subscriber must possess a satellite dish, an integrated receiver/decoder, and an access card to unscramble the signals. DIRECTV provides this equipment to its subscribers either for free or for a small fee. The access card, otherwise known as an ISO–7816 compliant smart card, is roughly the size of a credit card and contains a small microprocessor chip that is inserted into a DIRECTV receiver. DIRECTV programs the subscriber's access card with data corresponding to the subscriber's level of service. In other words, the cards are electronically programmed to block or unblock television channels and specific programs to include only the programming for which the subscriber has paid.

In spite of DIRECTV's efforts to prevent unauthorized reception and use of its programming, individuals have sought to illegally decrypt and intercept DIRECTV's signal without authorization by use of various Pirate Access Devices. Although Pirate Access Devices vary in type, they essentially allow the user to modify the access card to circumvent DIRECTV's security measures and decode its satellite signals.

On May 25, 2001, DIRECTV executed writs of seizure at the mail shipping facility used by several major suppliers of Pirate Access Devices, including Vector Technologies; DSS–Stuff; Shutt, Inc.; Intertek; WhiteViper; and DSS–Hangout (the "Suppliers"). Among other things, DIRECTV obtained shipping records, email communications, and credit card receipts identifying purchasers, or end-users, of illegal Pirate Access Devices from the Suppliers. DIRECTV used that information to obtain settlements (including monetary payments, stipulated injunctive relief, and turnover of the devices) from end-users or, failing a settlement, to sue end-users in federal court. This is one of perhaps thousands of suits DIRECTV has

filed throughout the country against end-users.

On June 18, 2000, Barnes purchased a WildThing2 Clone Unlooper ("Unlooper") from WhiteViper Technologies. (Barnes Dep. at 16–17 & Dep. Ex. 1, Pl.'s Br. Supp. Mot. Ex. 2.). At that time, Barnes was a DIRECTV subscriber and possessed all of the necessary equipment to receive DI-RECTV's satellite signals. (*Id.* at 10–12.) Barnes purchased the Unlooper in order to see if it would "work and load up." (*Id.* at 18.) Barnes believed that the Unlooper would "load up and [he] would be able to get some [DIRECTV] programming" for free.[1] (*Id.*) Barnes used a programmed DIRECTV access card in the Unlooper but was unable to get it to work or "load up." (*Id.* at 19–20.) Based upon the information he read on the internet, Barnes believed that he would be able to receive free programming by using the Unlooper and a programmed access card. (*Id.* at 19). Barnes sent an email to WhiteViper and visited various websites devoted to providing information on using Pirate Access Devices, including one called "Pirate's Den," to obtain information on using the Unlooper. (*Id.* at 19.) Barnes also downloaded software for the Unlooper from the WhiteViper site. (*Id.* at 22.) However, Barnes testified that he was never able to make the Unlooper work and never received any DIRECTV programming beyond that covered by his subscription. (*Id.* at 22–23.)

## II. *Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

## III. *Discussion*

In its complaint, DIRECTV asserts four separate claims, including: (1) unauthorized reception of satellite signals in violation of 47 U.S.C. § 605(a); (2) unauthorized interception of satellite communications in violation of 18 U.S.C. § 2511(1)(a); (3) possession of pirate access devices in violation of 18 U.S.C. 2512(1)(b)[2]; and (4) conversion. DI-

---

1. DIRECTV has provided a declaration by its expert as support for its assertion that Pirate Access Devices are designed for the sole purpose of disabling the security features on DI-RECTV access cards. Barnes has cited a report by an expert as support for his assertion that smart card technology has many legitimate uses apart from altering DIRECTV access cards. Although DIRECTV has cited several reasons for disregarding the purported expert report cited by Barnes, the Court need not determine whether Pirate Access Devices have legitimate uses not related to

DIRECTV access cards because Barnes admits that he purchased the device for the sole purpose of receiving free DIRECTV programming.

2. This claim is actually denominated as possession of pirate access devices in violation of 18 U.S.C. § 2511(1)(b) but the Court understands this claim to be based upon § 2512(1)(b) in light of the references to § 2512(1)(b) in the body of the claim as well as the Court's review of the statutes.

RECTV has stated that it will not pursue the third and fourth claims against Barnes and that those claims should be considered withdrawn. (Pl.'s Br. Opp'n Def.'s Mot. at 7 n. 4.) Thus, the only claims before the Court are DIRECTV's claims under 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a).

DIRECTV has moved for summary judgment on its claim under 18 U.S.C. §§ 2511(1)(a), (2)(d), and 2520, on the ground that Barnes has admitted to violating these statutes by intercepting DIRECTV programming for a tortious or unlawful purpose. Barnes has moved for summary judgment as to the remaining claims on the ground that DIRECTV has failed to create a genuine issue of material fact as to the alleged violations of 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a). Barnes further argues that DIRECTV has failed to state a claim under 18 U.S.C. § 2511(1)(a).[3]

## A. DIRECTV's Motion For Summary Judgment

■ DIRECTV contends that it is entitled to summary judgment on its claim that Barnes violated 18 U.S.C. § 2511(1)(a) because Barnes' admissions are sufficient to show that Barnes "intercepted" DIRECTV's satellite signals. Section 2511(1)(a) imposes criminal liability upon any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). In addition, 18 U.S.C. § 2520(a) creates a private cause of action for violations of § 2511. *DIRECTV, Inc. v. Hosey*, 289 F.Supp.2d 1259, 1264 (D.Kan.2003); *DIRECTV, Inc. v. Childers*, 274 F.Supp.2d 1287, 1288 (M.D.Ala.2003); *DIRECTV, Inc. v. Jerolleman*, No. Civ. A. 03–1465, 2003 WL 22697177, at *2 (E.D.La. Nov.12, 2003). That section provides:

> Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a).

DIRECTV argues that it is entitled to summary judgment even though Barnes denies that he was able to view any DIRECTV programming beyond that provided by his subscription. DIRECTV theorizes that all DIRECTV subscribers, regardless of whether they are legitimate users or are attempting to access additional programming without authorization, "intercept" DIRECTV's satellite signals for purposes of §§ 2511(a)(1) and 2520(a) whenever their receivers are turned on. DIRECTV notes that the datastream for the entire range of DIRECTV programming is sent to every subscriber, and DIRECTV uses the access card and receiver in tandem to permit the user to decrypt the portions of the signal they are authorize to receive. Thus, according to DIRECTV, the subscriber's "interception" is unlawful only when he or she attempts to view unauthorized programming. DIRECTV contends that its position is consistent with the exception provided in § 2511(2)(d), which provides:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or elec-

---

**3.** Barnes also raises the same arguments in his motion with regard to DIRECTV's claims under 18 U.S.C. § 2512. However, the Court need not address those arguments because, as noted, DIRECTV has expressly withdrawn its claim based upon § 2512. Therefore, that claim and the conversion claim will be dismissed with prejudice.

tronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d).

■■■■ DIRECTV's argument must be rejected because it conveniently ignores several pertinent statutory provisions, most notably, the definition of "intercept," which "means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). In turn, the term " 'contents', when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). Thus, under the plain statutory definition, a person must acquire, by sound or other means, the contents of a communication. *See Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 742–43 (4th Cir.1994) (concluding that no interception occurred because there was no evidence that any of the defendant's employees "ever listened to, recorded, or otherwise acquired any conversations"); *Thomas v. Ohio Dep't of Rehab. & Corr.*, 36 F.Supp.2d 997, 999 (S.D.Ohio 1998) ("There is no 'interception' by a person or entity that never acquires the contents of any conversation."). DIRECTV fails to cite any case law supporting its rather novel proposition that a person can intercept a communication for purposes of §§ 2511 or 2520 without acquiring, in some way, the contents of the communication.[4] In light of the

definition of "intercept" quoted above, DIRECTV's argument is without merit. Moreover, DIRECTV has failed to present any evidence showing that there is no genuine issue of material of fact regarding Barnes' interception of DIRECTV programming. Therefore, DIRECTV's motion for summary judgment will be denied.

### B. Barnes' Motion For Summary Judgment

#### 1. Violation of 47 U.S.C. § 605(a)

In its first claim, DIRECTV alleges that Barnes received and assisted others in receiving DIRECTV's satellite transmissions in violation of 47 U.S.C. § 605(a). That provision states, in pertinent part:

[N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpena [sic] issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communi-

---

4. DIRECTV's reliance upon § 2511(2)(d) is misplaced, as there must be an interception in order for that section to apply.

cation to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

47 U.S.C. § 605(a). Any person aggrieved by a violation of subsection (a) may bring a civil action in federal court. 47 U.S.C. § 605(e)(3)(A). In order to prevail on its claim under this section, DIRECTV must prove that Barnes received, assisted in receiving, or intercepted DIRECTV satellite transmissions. See DirecTV, Inc. v. Moreno, No. 03–2478(JEI), 2003 WL 22927883, at *2 (D.N.J. Dec.11, 2003); DirecTV, Inc. v. Karpinsky, 269 F.Supp.2d 918, 926 (E.D.Mich.2003), vacated in part upon reconsideration, 274 F.Supp.2d 918 (E.D.Mich.2003); Joe Hand Promotions, Inc. v. Rennard Street Enters., Inc., 975 F.Supp. 746, 753 (E.D.Pa.1997).

In spite of his admissions that he possessed all of the equipment necessary to receive DIRECTV's satellite signals and purchased the Unlooper in order to receive free DIRECTV programming, Barnes contends that he is entitled to summary judgment because he has testified that he was never able to make the unlooper work and never received any additional DIRECTV programming. Barnes contends that there is no genuine issue as to whether he actually received DIRECTV programming without authorization because DIRECTV has no evidence showing that Barnes actually received or intercepted DIRECTV's signal. In support of his argument, Barnes relies heavily upon V Cable, Inc. v. Guercio, 148 F.Supp.2d 236 (E.D.N.Y. 2001), which Barnes asserts is on point with this case. In V Cable, the plaintiff alleged that the defendant violated 47 U.S.C. § 605(a) by purchasing and using or distributing pirate cable descrambling devices. The court held that the plaintiff failed to show that it was an "aggrieved party" entitled to bring an action for violation of § 605(a) because there was no evidence that the defendant distributed or used the pirate devices within the plaintiff's market area or elsewhere. The court stated:

> A perusal of the statutes underlying the present action indicates that it is not a crime, nor a basis for a civil claim, for an individual to purchase or possess pirate descrambling devices, even if it appears that possession is with the intent to distribute ....
>
> ....
>
> Cablevision concedes that it has no direct evidence that defendant either used or distributed any of the items purchased from either Global or J.E.S. Moreover, it has offered no evidence, such as unexplained bank deposits in amounts suggesting he was selling de-

scramblers, or other circumstantial evidence of sale. *Id.* at 242–43. In addition, the court held that the plaintiff failed to show that the defendant used one or more of the descramblers. The court observed that there was no evidence that the defendant decreased the level of his cable service following his receipt of the descramblers, which "arguably would be some evidence of his usage of an illegal device," and there was no testimony from the defendant, his family members, or neighbors, that they viewed programming beyond that covered by the defendant's subscription. *Id.* at 244–45. Barnes contends that as in *V Cable*, there is no evidence that he actually used the Unlooper to receive additional DIRECTV programming.[5]

DIRECTV counters that *V Cable* is inapposite to this case because it was not, as Barnes claims, a summary judgment opinion, but instead was the district court's findings of fact and conclusions of law after a trial. In addition, DIRECTV contends that *V Cable* is distinguishable because the plaintiff in *V Cable* relied solely upon evidence that the defendant purchased pirate cable devices, whereas DIRECTV has presented substantially more evidence showing that Barnes actually intercepted or received DIRECTV's satellite signal. In particular, DIRECTV contends that the following evidence is sufficient to create a genuine issue of fact as to whether Barnes actually intercepted DIRECTV's satellite signal: (1) Barnes owned all of the equipment necessary to intercept DIRECTV satellite signals; (2) Barnes bought the Unlooper, a device whose sole purpose is to modify DIRECTV access cards to disable the security features on the access cards; (3) Barnes bought the Unlooper with the intent to use it to modify his DIRECTV access card and followed through on that intent by attempting to use it; (4) Barnes' purchase of the Unlooper is evidence that he already possessed an illegally modified DIRECTV access card or that he intended to use the

---

5. On January 30, 2004, Barnes filed a Notice of Supplemental Authority attaching copies of thirteen opinions and/or orders from other district courts in various DIRECTV cases. The bulk of the opinions and/or orders dealt with the issue of whether DIRECTV may maintain a claim for violation of 18 U.S.C. § 2512 based upon mere possession of a Pirate Access Device. Those opinions and orders are not relevant to the issues in these cases in light of DIRECTV's express withdrawal of its claim under § 2512. Only two of the cited opinions addressed DIRECTV's claim under § 2511 for actual interception. The first, an order from the Eastern District of North Carolina, held that DIRECTV is not entitled to bring a claim under 18 U.S.C. § 2520 based upon a violation of § 2511 because the damages provision, subsection (c), provides for damages only where the defendant views a satellite video transmission that is not scrambled or encrypted. The Court disagrees with this conclusion because subsection (c)(2) provides for actual or statutory damages "[i]n any other action," which would include the situation here, where the satellite signal is scrambled or encrypted. *See* 18 U.S.C. § 2520(c)(2). The second opinion and order pertaining to a DIRECTV claim under § 2511 is the opinion in *DIRECTV, Inc. v. Cavanaugh*, NO. 03–60001 (E.D.Mich. Nov. 18, 2003). The opinion in *Cavanaugh* does not help Barnes, because the court in that case held that DIRECTV's circumstantial evidence was sufficient to defeat the defendant's motion for summary judgment. The defendant denied that he used the device to intercept DIRECTV's signal. DIRECTV's evidence was that: (1) the defendant was a DIRECTV subscriber; (2) the defendant purchased a pirate device; (3) the defendant's account history with DIRECTV showed decreases in subscription to premium channels or movies that corresponded with the dates of purchase of the pirate devices; and (4) the defendant complained of equipment failure that likely resulted from illegal tampering. The court held that the evidence "support[ed] the reasonable inference that signal theft did in fact occur." *DIRECTV, Inc. v. Cavanaugh*, No. 03–60001, slip op. at 9 (E.D.Mich. Nov. 18, 2003).

Unlooper to modify DIRECTV access cards in the future; and (5) Barnes' subscriber history provides further evidence that Barnes actually received or intercepted DIRECTV programming.

DIRECTV contends that the opinions in *DirecTV v. Karpinsky* show that DIRECTV has presented more than sufficient evidence to survive Barnes' motion for summary judgment. In *Karpinsky*, the defendant moved for summary judgment based upon his testimony that he was not and never had been a DIRECTV subscriber and that he did not possess the satellite dish and receiver required to receive DIRECTV's satellite transmissions. *DirecTV v. Karpinsky*, 269 F.Supp.2d 918, 926 (E.D.Mich.2003). DIRECTV failed to offer evidence rebutting the defendant's evidence, however, it opposed the motion by citing (1) the defendant's purchase and possession of two "Smartcard Recovery System" devices in 2001; (2) statements by DIRECTV's vice president to the effect that the devices had no legitimate personal or commercial use, other than to assist in the interception and decryption of DIRECTV signals; and (3) statements by the vice president that anyone who visited the website of the company from which the defendant purchased the device would know that the devices were advertised primarily for use in illegal reception of DIRECTV's signals. The court concluded that while DIRECTV's evidence raised a possible inference that the defendant possessed the devices knowing that they were primarily used to unlawfully intercept DIRECTV signals, a reasonable fact-finder could not infer that the defendant unlawfully intercepted DIRECTV's signals in light of the evidence that the defendant was not a DIRECTV subscriber and did not possess the equipment needed to intercept the signals. *Id.* at 927. Shortly after the court granted summary judgment to the defendant, DIRECTV moved for reconsideration, citing evidence indicating that the defendant had in fact purchased a DIRECTV system and therefore had the ability to intercept DIRECTV's signals. *DirecTV v. Karpinsky*, 274 F.Supp.2d 918, 921 (E.D.Mich.2003). The court granted the motion because it found that based upon the new evidence, a reasonable factfinder could infer that the defendant did in fact unlawfully intercept or aid in intercepting DIRECTV's signals using the devices. *Id.* DIRECTV contends that the *Karpinsky* opinions, considered together, implicitly support the proposition that a defendant's purchase of a Pirate Access Device, coupled with evidence of the defendant's purchase or possession of a DIRECTV satellite system, is sufficient to withstand a motion for summary judgment.

■ A plaintiff need not produce direct evidence to establish that a communication was received or intercepted, but may rely upon circumstantial evidence. *See Walker v. Darby*, 911 F.2d 1573, 1578 (11th Cir. 1990) (holding that circumstantial evidence may be used to prove a wiretap claim, including actual interception). In spite of the large number of cases DIRECTV has filed against end-users such as Barnes, to this Court's knowledge, no court has expressly addressed the sufficiency of circumstantial proof required for DIRECTV to establish actual interception of its satellite signals when a defendant admits that he purchased a device to receive free DIRECTV but denies that he was unable to use the Pirate Access Device to actually receive or intercept DIRECTV's signal. However, the Court finds some guidance from eavesdropping cases under the Wiretap Act.

In *Ages Group L.P. v. Raytheon Aircraft Co., Inc.*, 22 F.Supp.2d 1310 (M.D.Ala.1998), the court found that the plaintiff presented sufficient evidence to survive the defendant's motion for sum-

mary judgment. The defendant argued that the evidence showed that there was only video surveillance, which was not illegal, without interception of the contents of any communications. Although the court stated that "proof of possession of equipment used to intercept oral communications could certainly be part of [the plaintiff's] proof that oral communications were intercepted," the claim survived because there was other substantial evidence, including eyewitness testimony showing that the defendant's employees were using listening devices. *Id.* at 1316. The court rejected the defendant's argument that even if its agents possessed equipment capable of intercepting communications, there was no evidence that the communications were actually intercepted. The court noted that the circumstantial evidence established that the agents possessed equipment consistent with monitoring and receiving oral communications and that one of the agents was observed wearing a headset which would only be used if the microphone and recorder were being used. *Id.* at 1318–19.

In *Gross v. Taylor*, No. Civ. A. 96–6514, 1997 WL 535872 (E.D.Pa. Aug.5, 1997), two police officers sued the police chief, two sergeants, the police department, and others alleging, among other things, violations of the federal and state wiretap laws. The police department had installed audiovisual surveillance systems in certain patrol cars for the purposes of collecting evidence and protecting the police from liability. The systems included a microphone which was installed in the back seat of the car. The existence of the rear-seat microphone was apparently not disclosed to the officers during the training session for use of the system. Prior to the training, the plaintiffs discovered the existence of the rear-seat microphones, but they did not share the information with their supervisors until almost a month later, when another officer discovered that his system

recorded sound as well as video. The police department removed the rear-seat microphones within two days of learning of their existence. The court held that the defendants were entitled to summary judgment on the wiretap claims because, among other things, the plaintiffs failed to present evidence establishing an actual interception. In its analysis, the court found or assumed that both plaintiffs established that they used a patrol car which was equipped with a rear-seat microphone during the relevant time period and that the system was capable of recording sounds. *Id.* at *5. However, the court concluded that such evidence was insufficient to create a genuine issue of fact about whether there was an actual interception because the plaintiffs failed to "present[ ] any evidence substantiating any claim beyond that they were in cars with systems capable of recording." *Id.* The court acknowledged the difficulties a plaintiff faces in proving a wiretap claim and that because of those difficulties courts have held that direct evidence of specific conversations is not necessary, but it observed that those cases do not allow a plaintiff to establish a claim upon "the barest of circumstantial evidence." *Id.* at *6. The court noted that in cases allowing proof by circumstantial evidence, the evidence was "substantial" and included "statements by the defendants to third parties that they engaged in wiretapping, evidence of targeting the plaintiffs for bugging by installing a microphone in his or her office, actual tapes of intercepted conversations, evidence of a pattern of wiretapping, and testimony that the defendant was remotely monitoring the plaintiff." *Id.* The court concluded that summary judgment was appropriate, given the absence of such evidence in that case.

*Ages Group* and *Gross* both establish that it is not enough for a plaintiff merely to show that a defendant possessed equipment capable of intercepting a communi-

cation in order to show that the defendant actually received or intercepted the plaintiff's communication. Rather, the plaintiff must produce circumstantial evidence sufficient to support the conclusion that there was an actual interception. The unreported decision by the Southern District of Texas in *DIRECTV, Inc. v. Bush,* cited by Barnes, applies this principal. In *Bush,* the court held that the defendant was entitled to summary judgment because, although it was undisputed that the defendant had purchased a pirate device, DIRECTV failed to show that the defendant possessed the equipment needed to intercept DIRECTV's satellite signal or actually used the device to intercept DIRECTV's signals. *DIRECTV v. Bush,* No. H–03–1765, slip op. at 6 (S.D.Tex. Oct. 27, 2003). This case differs from *Bush,* because here, DIRECTV has not only presented evidence that Barnes purchased a Pirate Access Device, but also that: (1) Barnes was a DIRECTV subscriber who possessed the necessary equipment to intercept DIRECTV's satellite signal; (2) Barnes was aware that the Unlooper could be used to alter his DIRECTV access card; (3) Barnes admitted that he purchased the device for the purpose of attempting to obtain free DIRECTV programming and that he actually attempted to use the device; and (4) the Unlooper was designed to alter DIRECTV access cards and was not designed for any other legitimate purpose.

■ The Court concludes that this evidence is sufficient to allow a reasonable fact-finder to infer that Barnes actually received or intercepted DIRECTV's signals because it shows that Barnes did more than merely possess the Unlooper, but was actually targeting DIRECTV's satellite signals. Furthermore, although Barnes has testified that he was unable to make the Unlooper load up and never received any DIRECTV programming beyond that for which he paid, DIRECTV has presented additional evidence which tends to refute Barnes' testimony.[6] In particular, DIRECTV contends that Barnes' subscriber history, as summarized in DIRECTV's interrogatory answer, refutes Barnes' claim that he was unable to intercept DIRECTV's signal. The interrogatory answer states:

Defendant purchased his unlooper device in June 2000 from WhiteViper Technologies. This purchase indicates not only that defendant used the unlooper device beginning in June 2000, but that at times prior to June 2000 he used a pirated DIRECTV access card in his possession. An unlooper is useful only to "unloop" pirated cards that have been "looped" by DIRECTV ECMs.

Defendant was a DIRECTV subscriber with a history of frequent suspending and reactivating of his DIRECTV services. This practice is consistent with unauthorized interception of DIRECTV's satellite signals.

In addition, despite frequent purchases of pay-per-view movies from 1995 through 1997, defendant's purchases abruptly stopped after May 1997. DIRECTV's last "callback" to the defendant's DIRECTV receiver was in September 1999. This indicates that

---

**6.** In this regard, *Karpinsky* differs from this case because the defendant in *Karpinsky* did not claim that he was unable to decrypt and receive the signal, but instead claimed that he was not a DIRECTV subscriber and did not possess the equipment necessary to intercept DIRECTV's signal. The defendant in *Karpinsky* also claimed that he purchased the pirate device to use on his personal computer. DIRECTV's evidence that the defendant was actually a DIRECTV subscriber and that the device had no legitimate purpose was sufficient to allow the jury to infer that the defendant used the device to receive or intercept DIRECTV's signals.

defendant disconnected his DIRECTV receiver from his telephone wall outlet. The phone connection is DIRECTV's method of monitoring pay-per-view purchases, and people who are using pirated DIRECTV access cards to receive programming without authorization often disconnect their phone lines to facilitate the interception. DIRECTV alleges that defendant began using a pirate access card as early as June 1997. This is unsurprising, as the unlooper that defendant purchased is useful only to repair "looped" pirate access cards, and thus is evidence of prior possession and use of such a card.

(Pl.'s Am. Objections & Resp. to Def.'s 1st Set of Interrogatories No. 11, Pl.'s Br. Opp'n Ex. 4.) [7]

In light of the evidence presented by DIRECTV, a genuine issue remains as to whether Barnes actually received or intercepted DIRECTV's signal. Therefore, the Court will deny Barnes' motion for summary judgment on this claim.

## 2. Violation of 18 U.S.C. § 2511(1)(a)

■ As discussed above, in order to establish its claim that Barnes violated § 2511(1)(a), DIRECTV must show that Barnes intercepted DIRECTV's signal. For the same reasons that DIRECTV's evidence has created a genuine issue of material fact with respect to the claim under 47 U.S.C. § 605(a), the Court concludes that DIRECTV's evidence also creates a genuine issue of material fact with regard to Barnes' interception of DIRECTV's signal under § 2511(1)(a). Therefore, the Court will also deny Barnes' motion on this claim.

## 3. Failure To State A Claim Under § 2511(1)(a)

■ Barnes argues that DIRECTV's claim under 18 U.S.C. § 2511 must be dismissed because that section is a criminal provision which does not provide for a civil cause of action. This argument must be rejected, because while § 2511 itself does not provide for a private right of action, it is well established that § 2520(a) provides a private right of action for violations of § 2511. *See DIRECTV, Inc. v. Cardona,* 275 F.Supp.2d 1357, 1368–69 (M.D.Fla.2003); *Gunderson v. Gunderson,* No. 02–1078–CVW–ODS, 2003 WL 1873912, at *1 (W.D.Mo. Apr.14, 2003); *DirecTV v. Westendorf,* No. 03 C 50210, 2003 WL 22139786, at *1 (N.D.Ill. Sept.16, 2003); *In re DoubleClick Inc. Privacy Litig.,* 154 F.Supp.2d 497, 514 n. 22 (S.D.N.Y. 2001). Barnes' argument is really that DIRECTV fails to state a claim because it cites only § 2511 in its second claim and does not mention § 2520(a). However, DIRECTV cites § 2520(a) in its prayer for relief, and it is sufficiently clear that DIRECTV is alleging that Barnes violated § 2511(1)(a) as part of its claim under § 2520(a). Thus, DIRECTV states a claim for violation of § 2511(1)(a).

## IV. *Conclusion*

For the foregoing reasons, the Court will deny DIRECTV's motion for summary judgment and Barnes' motion for summary judgment. The Court will dismiss DIRECTV's claim based upon the alleged violation of 18 U.S.C. § 2512 and DIRECTV's conversion claim.

---

7. DIRECTV has attached its records regarding Barnes' subscriber history as an exhibit to its brief in opposition to Barnes' motion but has made no attempt to elaborate on those records beyond what is stated in DIRECTV's interrogatory answer. The Court has reviewed the records and has attempted to make sense of the information, to the extent that the purport of the information is apparent from the face of the documents.