**DIRECTV, INC., Plaintiff,**

**v.**

**Brian HOSEY and Mary Admire, Defendants.**

**No. CIV.A. 03–2278–GTV.**

United States District Court, D. Kansas.

Aug. 23, 2004.

Robert P. Numrich; Todd M. Johnson, Baty, Holm & Numrich, PC, Kansas City, MO, for Plaintiff.

Brian Hosey, pro se.

Steven D. Horak, Overland Park, KS, for Defendant.

## MEMORANDUM AND ORDER

VANBEBBER, District Judge.

Plaintiff DIRECTV alleges that Defendants surreptitiously intercepted and decrypted DIRECTV's satellite signals using devices intended for that purpose, ultimately to gain free viewing of satellite television programming. The case arises out of Plaintiff's acquisition of shipping records of distributors of devices intended for satellite television signal interception and decryption. Plaintiff originally brought five Counts against each Defendant in its Complaint. Counts One and Four of Plaintiff's Complaint concern violations of the Cable Communications Policy Act. Count Two alleges interception and disclosure of DIRECTV's electronic communications in violation of 18 U.S.C. § 2511. Count Three alleges possession, manufacture, and/or assembly of devices used for surreptitious interception of electronic communications in violation of 18 U.S.C. § 2512, and Count Five alleges civil conversion. This court previously dismissed Count Three against Defendant Mary Admire.

The case is now before the court on Defendant Admire's motion for summary judgment (Doc. 25). For the following reasons, the court denies Defendant Admire's motion.

### I. FACTUAL BACKGROUND

The following facts are taken from the summary judgment record. The court is mindful that facts are to be viewed in the light most favorable to the non-movant, but the court will present both sides of this case in order to highlight the genuine issues of material fact.

In an affidavit, Defendant Admire explains her version of the events leading to this case: She purchased "unknown merchandise" with her credit card in March 2001 at the request of an underage neighbor who did not have a credit card. When she received the merchandise in April 2001, she noted that the package's Connecticut return address did not match the address of the company. The package contained electronic merchandise that she could not identify. Admire determined that her young neighbor should not have the merchandise, and decided to return the

merchandise to the vendor. Admire made several attempts by phone and email to reach the vendor in Connecticut to determine the proper address to return the merchandise, but received no response. Eventually, Admire sent the merchandise to the return address on May 21, 2001. A receipt from the U.S. Post Office for $23.14 dated May 21, 2001 and an insured mail receipt of the same date showing a shipment made to Wallingford, Connecticut are attached to Admire's affidavit. Admire stated she never connected the electronics to her DIRECTV equipment and that she or her husband paid for all DIRECTV programming viewed at her home. Admire also denied all allegations made by DIRECTV against her. But Admire did not deny in her affidavit that she received pirate access devices.

In response to Defendant Admire's motion, DIRECTV argues that although there is no direct evidence that Admire used the equipment to intercept its satellite signal, the circumstantial evidence in this case is sufficient to withstand summary judgment and shows that Admire was surreptitiously intercepting DIRECTV satellite signal prior to the purchase of the equipment on April 6, 2001. DIRECTV relies on several pieces of evidence to support this proposition.

DIRECTV submitted a packing slip that it claims establishes the shipment of pirate access devices to Defendant Admire. The packing slip indicates that it is from a company called "Canadian Security and Technolo [sic]" and that it was printed April 6, 2001. The slip states that two "Cobalt Emulator[s]" and two "MK2 Unlooper[s]—WTX" were to be shipped to Mary Admire in Gardner, Kansas. There is no evidence provided to establish that this equipment was received by Admire, but as noted above, Admire does not deny receiving the pirate access devices. Moreover, she admits receiving what looked like electronic equipment in or about the spring or April of 2001. Admire also noticed that the package was from Canada because the credit card statement showed a Canadian exchange rate.

To authenticate the packing slip, DIRECTV submitted the affidavit of Scott Madvig, the owner and operator of Fulfillment Plus, a shipping facility. He testified in the affidavit that the packing slip was created by the regularly conducted business activity of Fulfillment Plus as a regular practice. He further testified in the affidavit that the documents were made from information transmitted by a person with knowledge of the transaction.

DIRECTV submitted an affidavit from James F. Whalen, Director of DIRECTV's Office of Signal Integrity, in which he stated that on May 25, 2001, DIRECTV executed a Writ of Seizure at Fulfillment Plus and obtained the packing slip that implicates Admire. He testified in the affidavit that Canadian Security and Technology used Fulfillment Plus as a mail facility. In his affidavit, Whalen explained the use of the emulators and unloopers that DIRECTV claims Admire purchased and used.

Unloopers restore functionality to DIRECTV access cards that have been disabled by DIRECTV's security measures. Access cards provided by DIRECTV to customers are activated by DIRECTV and allow subscribers to receive and view unscrambled and unencrypted satellite television channels. DIRECTV can electronically disable access cards by satellite when unauthorized program receipt is detected; this is referred to as "looping" the access card. Once access cards are disabled by DIRECTV, unloopers such as the two sent to Defendant Admire can restore functionality and enable the user of the restored access card to continue receiving DIRECTV satellite signals without authoriza-

tion. Whalen stated in his affidavit that the unloopers purchased by Admire are capable of restoring functionality to "hundreds of DIRECTV access cards."

Emulators such as those Defendant Admire allegedly purchased are used to connect a personal computer to a DIRECTV receiver via the slot in the receiver for the access card. When the personal computer is also connected to a device such as a smart card reader/writer with a DIRECTV access card in the smart card reader, the emulator imitates the DIRECTV access card and allows the receiver to receive DIRECTV signal. Pirating software on the personal computer allows the computer to emulate the access card and access pay-per-view and other DIRECTV programming without paying for it by "telling" the emulator that the channels are authorized for viewing. Use of an emulator in the DIRECTV access slot in the DIRECTV receiver protects the DIRECTV access card from the electronic disabling signals that DIRECTV sends in response to unauthorized activity.

Whalen stated that DIRECTV relied on the website operated by Canadian Security and Technology to assess the design and purpose of the pirate access devices sold by that company. Copies of website pages from the Canadian company are attached to Whalen's affidavit and he stated they describe the products typically used for pirating DIRECTV programming.

Whalen stated that the printout of Defendant Admire's DIRECTV account attached to his affidavit reflects a "long and consistent history of pay-per-view purchases between May 1996 and February 2000," but after that date, the pay-per-view purchases completely stop. The records indicate that Admire reduced her DIRECTV plan from a $70 per month plan to a minimal plan of $7 per month in October 2000, and discontinued DIRECTV service in September 2002.

Bill Gatliff is an electrical engineer with Netrino, Inc., a company retained by DIRECTV to provide expert evidence in this and similar cases, who also provided an affidavit opposing the motion for summary judgment. In his affidavit, Gatliff explained the uses of unloopers and emulators and stated that, in his opinion, the unloopers and emulators allegedly purchased by Defendant Admire were "primarily designed for the surreptitious interception of DIRECTV programming." Gatliff explained in technical detail exactly how each device works to get around DIRECTV's security features and explained that the "WTX" on the shipping receipt indicates that the unlooper purchased was specifically designed to manipulate a DIRECTV access card.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Lack of a genuine issue of material fact means that the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving

party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the nonmoving party. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984).

### III. DISCUSSION

■ Defendant Admire asks the court to strike the affidavits of Whalen, Gatliff, and Madvig. The court has reviewed the affidavits and the qualifications of the affiants, and determines that they are properly before the court. The court notes that Admire only recently received notice that Madvig would authenticate the shipping receipt, but the court does not find that the affidavit should be stricken for that reason.

Defendant Admire also asks the court to disregard the unauthenticated deposition testimony of Madvig and the orders and writs from the United States District Court for the District of California. The court agrees with Admire that the documents are not properly authenticated. Moreover, Admire has not yet had an opportunity to depose Madvig.

The thrust of Defendant Admire's argument is that there is no genuine issue of fact because DIRECTV lacks direct evidence that Admire actually used the equipment she received to intercept satellite signal. Admire states that the only evidence DIRECTV provides in support of its claims is Admire's receipt of equipment as evidenced by the packing slip. Admire argues that possession, alone, is insufficient to satisfy the elements of the counts against her.

But evidence of possession is not the only evidence before the court. DIRECTV has presented circumstantial evidence that may be used to create a reasonable inference that Defendant Admire either used the equipment she received, or had previously illegally intercepted DIRECTV signals: (1) Admire was a DIRECTV subscriber; (2) the equipment Admire received is used for illegal interception of DIRECTV signals; (3) the unloopers received by Admire are specifically used to repair DIRECTV access cards that have been disabled due to unauthorized viewing, suggesting unauthorized DIRECTV access prior to the shipment of the pirate access devices; (4) Admire ceased a longstanding practice of purchasing pay-per-view movies prior to receipt of the pirate access devices; (5) Admire's DIRECTV subscription plan changed from $70/month to $7/month five months prior to receipt of the equipment; (6) Admire does not provide the name of the company she contacted to try to return the equipment, the phone numbers or email addresses used, or copies of the email sent in her attempt to discern how to return the equipment; (7) the Post Office receipts attached to her affidavit do not indicate the mailing address of the intended recipient or the contents of the package; and (8) Admire admits that she never disputed the charges on her credit card, and has not been able to verify that the equipment she returned ever reached its destination. These facts are appropriate considerations for jurors making credibility judgments.

■ The court must now address whether circumstantial evidence is sufficient to survive summary judgment in this case. Whether violations of the Cable Communications Policy Act and 18 U.S.C. § 2511 can be based on circumstantial evidence has not been addressed in this circuit. DIRECTV offers two cases in support of its assertion that the evidence against Defendant Admire is sufficient to defeat summary judgment. In *DirecTV v. Karpinsky*, 274 F.Supp.2d 918 (E.D.Mich. 2003), the court originally granted summary judgment for the defendant because DIRECTV had no evidence that the defendant was a DIRECTV subscriber or purchased pirate access devices; the defendant provided a sworn affidavit denying both allegations. *Id.* at 921. The court reversed itself and denied summary judgment upon consideration of new evidence that showed that the defendant was a DIRECTV subscriber and did purchase pirate access devices from a retail store. *Id.* The court found there was a genuine issue of fact as to whether the defendant unlawfully intercepted DIRECTV signals because he was a DIRECTV subscriber and purchased pirating equipment.

DIRECTV also offers *Community Television Systems, Inc. v. Caruso*, 134 F.Supp.2d 455 (D.Conn.2000) (*rev'd on other grounds*, 284 F.3d 430 (2d Cir.2002)), as support for the use of circumstantial evidence to support interception. *Caruso* relied on direct evidence of purchase, receipt and installation of pirating equipment to support a judgment against the defendants for theft of cable programming, despite the lack of direct evidence of use of the equipment. *Id.* at 460.

In a case factually similar to this case, the Western District of Michigan relied on holdings in surveillance cases to determine that mere possession of pirating equipment was insufficient, but circumstantial evidence was sufficient to establish that communication was intercepted or received as required for violations of 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a)—two of the four counts levied against Defendant Admire. *DIRECTV v. Barnes*, 302 F.Supp.2d 774, 782–84 (W.D.Mich.2004) (citing *Walker v. Darby*, 911 F.2d 1573, 1578 (11th Cir.1990); *Ages Group L.P. v. Raytheon Aircraft Co.*, 22 F.Supp.2d 1310 (M.D.Ala.1998); *Gross v. Taylor*, No. Civ A. 96–6514, 1997 WL 535872 (E.D.Pa. Aug. 5, 1997)). In *Barnes*, the defendant admitted to purchasing an unlooper for the purposes of illegally intercepting DIRECTV signals, but claimed he was never able to make the equipment work and, thus, did not intercept unauthorized signals. *Id.* at 777. DIRECTV provided evidence that (1) the defendant was a DIRECTV subscriber; (2) the defendant abruptly stopped purchasing pay-per-view movies prior to receipt of the unlooper; and (3) unplugged his DIRECTV equipment from the phone line in order to facilitate unauthorized interception. *Id.* at 784–85.

While the *Barnes* case is not binding precedent, the court finds the reasoning persuasive. The circumstantial evidence presented in this case is very similar to that presented in *Barnes* and is stronger than that in *Karpinsky*. While this case is distinguishable from *Caruso* because there is no direct evidence of installation in this case, the court still determines that enough conflicting evidence exists in this case to submit it to a finder of fact. DIRECTV has provided evidence beyond Defendant Admire's mere possession of the pirating equipment and that evidence, although circumstantial, creates a genuine issue as to whether Admire intercepted DIRECTV satellite signals. Summary judgment is inappropriate, and Defendant Admire's motion is denied.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendant Ad-

mire's motion for summary judgment (Doc. 25) is denied.

Copies or notice of this order shall be transmitted to counsel of record.

**IT IS SO ORDERED.**